## No. 6815.

SUMMERS & BRANN..NS vs. JAMES S. CLARK. S. L. BOYD, GARNISHEE.

A judgment creditor who seizes under execution leased property belonging to his debtor, and held by the lessee under a lease *not recorded*, becomes entitled to, and may exact from the lessee all the rents thereafter accruing from said property; and the fact that the lessee has executed and delivered to the debtor his negotiable promissory notes covering the rent to become due for the whole of the unexpired term of the lease, will not exonerate him from liability to the seizing creditor, for the rents accruing subsequent to the seizure.

A seizure under *fi. fa.* of property bearing rents includes a seizure of the rents.

APPEAL from the Sixth· District Court, parish of Orleans. *Rightor,* J.

*D. C. Labatt* for plaintiffs and appellees.

*Kennard, Howe & Prentiss* for garnishee and appellant.

The opinion of the court was delivered by

SPENCER, J. Plaintiffs having obtained judgment for large amount against Clark, seized under execution a house and lot on Canal street, belonging to their debtor. This house was occupied at time of seizure by S. L. Boyd, under a lease from Clark, at $375 per quarter; for which quarterly rents Boyd had delivered to Clark his negotiable promissory notes. At the date of seizure one of those notes for quarterly rent was part due and had been paid. The plaintiffs, upon seizing the house and lot, served process of garnishment on Boyd, and propounded interroga-

tories to him, touching his indebtedness for rent. Boyd answered, stating that he held the house and lot under a notarial lease from Clark, and that he had delivered to Clark for the rent, falling due quarterly, negotiable promissory notes. That if Clark held these notes he was his debtor, otherwise not. That he did not, however, know who held them. Plaintiff moved for judgment against the garnishee, as on confession. No legal principle is better settled than that an indebtedness, evidenced by negotiable promissory notes, can not be seized by garnishment of the maker. The notes themselves must be taken into actual custody by the sheriff. But there are other legal principles which may modify or vary this rule. Thus when a contract gives rise to several successive obligations to be performed at different times, it may happen that one or more of these obligations, at the time of performance, are due to other persons than the original contracting creditor. Contracts of lease are of this character. The rents and fruits of an immovable belong primarily to its owner; but the ownership may be transferred from one person to another pending the lease.

As rents are considered to accrue day by day, and as being due by successive obligations, it may well happen that the rents of *to-day* are due to A, and those of *to-morrow* to B, though the lessee hold under one and the same contract all the while. In principle, therefore, *where the right to receive the rents* has passed from one person to another, the tenant can not plead, against the latter's demand for rent, payments he may have made, by anticipation, to the former.

A tenant who has given negotiable promissory notes for future rents ought to be considered in a position similar to one who has paid his rents in advance. The question, therefore, presented for our decision is, when rents to accrue in the future have been paid in advance by cash or negotiable notes, does a seizure of the leased immovable by a judgment creditor of lessor operate a seizure of rents accruing after the seizure?

As the lease in this case was not recorded in the conveyance office, the question is not affected by the registry laws. "All sales, *contracts*, and judgments affecting immovable property which shall not be so recorded, shall be utterly null and void, except between the parties thereto." C. C. 2266. See also C. C. 2264, which provides: "No notarial act concerning immovable property shall have any effect against third persons," unless recorded in the conveyance office. These are negatives pregnant with affirmatives to the effect that contracts " affecting " or " concerning " immovables (and therefore leases thereof), will have effect against third persons, if duly recorded; just as sales, mortgages, etc., affect them when recorded. It would seem that where a lease of real estate has been made in good faith and duly recorded, a creditor of

the lessor, seizing the property, will take it subject to the rights of lessee under the contract, unless the seizing creditor have a mortgage or privilege anterior to the registered lease. If, in such a case, the tenant have paid his rents in advance for the whole term, either in cash or in negotiable notes, the seizing creditor, having no anterior mortgage or privilege, can not, nor can any subsequent purchaser, exact rents until the expiration of the term. But, as we have stated, the tenant Boyd holds under an unrecorded lease, and any payments of rent which he may have made by anticipation, to Clark, are without effect as against creditors or subsequent purchasers of Clark. But it is contended by the counsel of Boyd that until the seizure made by plaintiffs ultimates in a sale of the property they can not take the rents; that it is only by title of owner, and after that title is acquired, that rents can be demanded. It is true that the right to take rents must be *derived from or through the owner;* but it is not true that the person exercising this right of the owner must be the owner himself. His creditors may exercise that right, and may even do so in cases and under circumstances where he could not himself do so, as we shall see hereafter. The law undoubtedly gives the creditor the right to seize the debtor's property; and article 466, C. C. declares that: "The fruits of an immovable &ast; &ast; produced while it is under seizure are considered *as making part thereof,* and inure to the benefit of the person making the seizure." Article 656, C. P., provides: "When the sheriff seizes houses or lands, he must take at the same time *all the rents,* issues, and revenue which this property may yield." How, in the face of these provisions, can it be maintained that the seizing creditor can not as such, and through the sheriff, demand and take the rents of the seized premises? The distinction, therefore, attempted to be drawn between the effects of a seizure and those of an actual sale under the writ is more seeming than real. The law does not more clearly or explicitly give the right of taking the fruits to the owner, than it does to the seizing creditor of the owner. Both rights are unquestionable, for both are positively given by the law. This distinction, too, when pushed to its legitimate results leads to legal absurdity. Thus A, being a judgment creditor of B for $100, seizes an immovable producing a monthly rent of $500. The law commands the sheriff to take those rents in satisfaction of the writ, and declares that they inure to the benefit of the seizing creditor. Before a sale of the immovable can possibly be effected, the rents satisfy and therefore extinguish the writ. But it is argued that these rents can not be taken and applied to the writ *until after the sale,* which can not be made because there is nothing due under the writ!

But it is urged in the second place that the seizing creditor, under garnishment process, can have no other or greater right than his debtor.

In our opinion, under the facts of the case before us, the process of garnishment was unnecessary, and constituted simply *another* seizure of what was *already under seizure.* The rents and fruits of an immovable under seizure "are considered as making part" of the thing seized—C. C. 466—and the sheriff is required "to take them." C. P. 656. But, if unnecessary, it was a convenient form for testing the tenant's liability. The proposition that the rights of a seizing creditor, in garnishment process, are *precisely measured* by those of his debtor, must be taken *cum grano salis,* and is not absolutely true. Garnishment under a *fi. fa.* is simply *a mode of seizing* incorporeal, intangible things. There is no philosophic reason for distinguishing between the rights of a creditor seizing *by garnishment intangible* things, and those of a creditor seizing, *by the hand of the sheriff corporeal or tangible things.* And, in point of fact, both classes of creditors often exercise other and greater rights than their debtors have or can exercise. The debtor *may have so divested himself of rights as to prevent his exercising them,* without having done it so as to debar his creditors from exercising them. Thus, in the sale of movables and incorporeal rights, delivery in one case, C. C. 1922, 1923, and notice to the debtor in the other, C. C. 2642, 2643, are essential to bind and give effect against creditors, though the debtor himself, who sold, *is bound* without delivery or notice. In either case the creditor may sieze directly or by garnishment, as the case may be, and exercise rights therefore which the debtor himself could not exercise. In the very case before us it is clear that Clark, having received in advance the rents for the term of the lease, could not do what we think his creditors have a clear right to do, to wit: compel the tenant, Boyd, to pay the rents from and after the date of the seizure into the hands of the sheriff. This is because the payments made by anticipation under an unrecorded lease though binding on the lessor are not so on his creditors. Nor are these principles more inequitable when applied to a lessee than when applied to a purchaser of immovables without registry, or movables without delivery. If a vendee in such case can, by seizure, be deprived of possession and enjoyment under his purchase, why not a lessee? If, in such case, it is no defense that the vendee *has paid the price,* why should it be that the lessee *has paid the rent?* The principles involved in the two cases are the same, and by no means novel. The judgment below condemned the garnishee to pay the rent after seizure, and we think it is correct.

It is therefore ordered and decreed that the judgment appealed from be affirmed with costs.

### ON APPLICATION FOR REHEARING.

In the opinion heretofore rendered in this case we held that under articles 2264 and 2266 of the Revised Civil Code an unrecorded lease of real estate was "*without effect*" "*null and void*" as against subsequent *bona fide* purchasers and creditors of the lessor. These articles were incorporated in the Code of 1870 for the first time, though there was in the Acts of 1855 a statute to the same effect as article 2264. Article 2266, as it now exists, is substantially new legislation, and appears in the Code of 1870 for the first time. We do not think these facts warrant or sustain the assertion made by the counsel that we have "*suddenly intro-duced into our jurisprudence a doctrine at war with the settled views of half a century.*" As we have seen, article 2266 is but eight years old, and if the jurisprudence were settled differently a half-century ago, we do not feel at liberty to adhere to doctrines which would be in direct conflict with a later provision of the Code. But as we are not referred by the counsel to any of the cases which establish his views, and know-ing of none ourselves, we are dispensed from its further notice. It may be that the rule of article 2266 is a harsh one. If so we are not the proper authority to change it.

But the counsel says that we declare the lease from Clark to Boyd without effect and null and void as to Summers and Brannins, and yet proceed to enforce it against Boyd. In response to this we have only to say, that when Mr. Boyd's enjoyment under the lease was disturbed by the seizure he had the perfect right to abandon the premises, and pro-ceed against Clark for restitution of the rents he had paid *in advance* (by negotiable promissory notes). But if he elected to continue his pos-session after the seizure, with the sheriff's consent, and without chang-ing the terms, there was, as it were, a tacit reconduction or attornment, and the seizing creditor properly measured his claims by the agreed rents.

We made no reference to "Maduel vs. Mousseaux," 29 A. 231, because we did not then and do not now consider that case as in con-flict with our views in this. That case announces correctly the general rule as to the liabilities of garnishees. This case rests upon wholly dif-ferent principles, and is based upon exceptions to that rule. We do not share the counsel's fears as to the disastrous consequences which are to follow our ruling in this case. On the contrary, we think that the rule of article 2266 is a very salutary one, and in perfect harmony with the theory of our constitution and laws on the subject of registry. If you will not give effect to a sale, or a donation, or a grant of usufruct, or mortgage, or privilege as against third persons, without registry, why should the rule differ for leases, which may be for long series of years?

There is no doubt that the general rule is "that no one can transfer a greater right than he himself has; except (says article 2015 C. C.) where *the neglect of some formality required by law has subjected the owner of the real incumbrance*" (such as *servitudes, leases*, etc.) "to a loss of his right, in favor of a creditor or *bona fide* purchaser." That is precisely the case here. Boyd neglected a formality required by law for the preservation of his rights against creditors of Clark.

This article 2015 fully sustains the other proposition maintained in this case, to wit: that when a lease of real estate has been preserved by the formality of registry, and is made in good faith, without fraud, it is good against subsequent purchasers and creditors, without precedent, mortgages, or privileges, and rents paid in advance by the tenant can not be demanded again or his enjoyment disturbed.

We see no reason to doubt the correctness of our decree in this case, and the rehearing is refused.