MONROE, C. J.
Plaintiff caused a writ of seizure and sale to issue by virtue whereof the Alice B. plantation, in the parish of St. Landry, was seized and advertised to be sold on August 8, 1914, in satisfaction of a claim for the unpaid balance of the price, represented by the purchaser’s ten promissory notes for $2,000 each, of which one was past due according to its terms, and the others had matured, according to the contract between the vendor and vendee, by reason of the nonpayment at maturity of said past-due note, and all of which were secured by mortgage and vendor’s privilege, imposed and acknowledged by an act of sale and mortgage in authentic form, duly recorded, importing confession of judgment and containing a pact and stipulation whereby the purchaser obligated himself not to alienate or incumber the property so conveyed to him *854 to the prejudice of said act. On the day of the sale William Edenborn and Henry P. Dart, appearing as joint receivers of the Union Irrigation Company, filed interventions and third oppositions in which they alleged that said company had been organized for the purpose of constructing and operating a large irrigation canal whereby to irrigate with water from Bayou Courtableau the bottom lands lying to the west and southwest of the towns of Washington and Opelousas; that for the purposes of its enterprise it had constructed a pumping plant near Washington, and a canal leading therefrom, at a cost of over $250,000; that the general manager of the company up to the appointment of the receivers had been J. Franklin Schell; that shortly after the purchase by defendant, Stamen, from the plaintiff, Boagni, of the Alice B. plantation Schell, acting in his said capacity of general manager, began to cultivate said property for account of said company; and that in 1913 the company went into possession thereof with the understanding that Edwin A. Stamen would convey to it the title thereto, and, to the knowledge and with the acquiescence of said Boagni, made improvements and constructed works, consisting of a lateral canal connecting with the main canal of the company, three barns, a lot of fencing, and a drainage ditch, which have enhanced the value of said property to the extent of $4,000, which amount, they allege, they are entitled to recover for the company from the proceeds of the sale. In another intervention the petitioners allege that among the assets which came into their possession as receivers was the Alice B. plantation; that, acting under the authority of the court, they had issued receiver’s certificates to the amount of $15,000, which are to he taxed as costs and take priority over all other claims against the company of which they are receivers; and that said plantation is hound for its pro rata of the same, as well as of all costs and charges of the receivership.
The prayer of each intervention is that the sheriff be ordered to retain the proceeds of the sale, or a sufficient amount to satisfy the claim set up by petitioners, and that (in the one case) they be paid “$4,000, being the enhanced valuation of said land by reason of the improvements and works made thereon by the Union Irrigation Company,” and (in the other ease) “that there be judgment decreeing that the said proceeds of the sale of the said property contribute to the payment of such pro rata share of the said receivers’ certificates and costs and charges of this receivership as may be determined on the trial hereof, and that there be judgment for such amount.”
The judge a quo declined to make any order for the retention of the proceeds of the sale by the sheriff, and the property was adjudicated to the plaintiff in the seizure for $2,000, of which $51.20 was expended in costs, and the balance was retained by the adjudicatee, whose total claim under the writ amounted to $23,266.08.
To the petitions of the interveners and opponents the plaintiff in seizure filed an exception of no cause of action and petitioners prosecute this appeal from a judgment maintaining that exception.
[1,2] According to the averments of the petition, the Union Irrigation Company went into possession of the land in question as master, and assumed that quality when it well knew that it had no title, and had no right, other than an understanding that said Edwin A. Stamen would make it a title, there being no allegation that the understanding was with Stamen (rather than Schell), or that it was even expressed in oral terms, and still less in writing. It is true that it is alleged that the improvements and works were made “to the knowledge and with the acquiescence of B. M. Boagni,” the *856 •unpaid vendor, but Boagni was not then the owner of the land, and, as he had no capacity to object to the making of such works as his vendee might negligently or otherwise permit, his acquiescence was involuntarily given and bound him to nothing. The law (declares that:
“The possessor in bad faith is he who possesses as master, but who assumes this quality, when he well knows that hechas no title to. the thing, or that his title is vicious and defective.” C. C. art. 3452.
And, as the Union Irrigation Company brought itself within that definition, the following further provision of the Code-would seem to apply to it, to wit:
“Art. 508. * * * When plantations, constructions and works have been made by a third person, and with such [third] person’s own materials, the owner of the soil has the right to keep them or to compel this person to take away or to demolish the same. * * * If the owner keep the works, he owes to the owner of the materials nothing but the reimbursement of their value and of the price of workmanship, without any regard to the greater or less value which the soil may have acquired.”
“Art. 2314. * * * He to whom property is restored must refund to the person who possessed it, even in bad faith, all he has necessarily expended for the preservation of the property.”
The interveners are not here claiming the value of any materials, or the price of any workmanship, nor yet any amount necessarily expended for the preservation of the property. In the one petition their demand is for $4,000, “being the enhanced valuation of said land by reason of the improvements made thereon by the Union Irrigation Company,” and, after having alleged, in effect (in the petition thus referred to), that the company had no title to the land, they then allege (in their other petition) that “among other assets coming into, their possession as receivers for, the said Union Irrigation Company was the said described tract of land,” and upon the basis of those allegations they ask that the certificates issued by them be paid from the proceeds of the land by preference over the claim of the vendor for the unpaid balance of the price. It seems clear, then, that regarding the irrigation company as merely a possessor in bad faith of the land the proceeds of which plaintiffs are claiming, their petitions disclose no cause of action. Moreover, it has been held by this court that, as the canals which the company may have constructed are inseparable from the soil, the company had no right of recovery even as to materials and workmanship. Boagni v. Schell, 136 La. 33, 66 South. 387; Boagni v. Stamen, 136 La. 36, 66 South. 389. And Act 199 of 1914, referring to money obtained on receiver’s certificates declares that:
“The sum so obtained shall bear a privilege on all of the property real or personal and the income of the corporation to be. paid by preference and priority over all other creditors of the corporation, save the vendor’s lien and privilege which may be outstanding, due and owing at the time the certificates are issued, which vendor’s lien and privilege shall remain unimpaired and retain its present status as provided for by existing laws.”
[3] If, upon the other hand, we should or could interpret the allegations of plaintiff’s petition to mean that the irrigation company took possession of the Alice B. plantation as Stamen’s tenant or licensee, the situation, quoad the claim here asserted, is not improved, since its contract or agreement, whatever it may have been, was not recorded, and was absolutely inoperative to defeat the rights of any one else acquired or exercised upon the faith of the public records.
In Flower & King v. Pearce & Son, 45 La. Ann. 853, 13 South. 150, it appeared that plaintiffs brought an ordinary action against defendants upon a merchant’s account, but subsequently caused an attachment to issue under which two plantations belonging to defendants were seized, that Clifton Cannon intervened, alleging that he was the lessee of the plantations at the time of the seizure, and asserting ownership of the crops, and that plaintiffs denied the existence of any valid lease, and alleged that, if such a lease ex *858 isted, it did not affect them for the reason that it was unrecorded, and the court sustained the position last stated, citing a number of authorities, and among them the following from the opinion in Summers & Brannin v. Clark, 30 La. Ann. 436, to wit:
“Boyd holds under an unrecorded lease, and any payments of rent which he may have made by anticipation to Clark are without effect as against creditors or subsequent purchasers of Clark. Nor are these principles more inequitable when applied to a lessee than when applied to a purchaser of immovables without registry, or movables without delivery. If a vendee in such case can by seizure be deprived of possession and enjoyment under his purchase, why not a lessee? If in such case it is no defense that the vendee has paid the price, why is it [a defense] that a lessee has paid the rent?”
In the instant case, if the plantation had been bought by the irrigation company and the title had not been recorded, it might have been seized and sold by any ordinary creditor of the vendor, since all sales, contracts, judgments, and acts affecting and concerning immovable property not recorded according to law are declared to be utterly null and void, except as between the parties thereto. Upon what theory, then, can the rights asserted by the receivers arising from an unrecorded “understanding” with we know not whom, but, say, with Stamen, the then owner, be held to defeat a seizure made by Stamen’s creditor to enforce payment of the price of the property seized?
[4] Again, it is not easy to understand how any one claiming under Stamen could acquire greater rights quoad the property in question as against Stamen’s vendor than Stamen himself could have acquired; and, if Stamen had constructed the canals and the fences and the barns which are mentioned in the petition of the interveners, he could hardly expect to recover anything for them whilst still indebted on his notes for the price of the property to the extent of more than $23,000. Upon the whole, we find no error in the judgment appealed from, which is therefore
Affirmed.
PROVOSTY, J., concurs, except as to the proposition that, even if the intervener had been in good faith, it could not have recovered for enhanced value.