HAMILTON CO. v. HUGHES, Sheriff, et al.*

No. 4036.

Court of Appeal of Louisiana. Second Circuit, Second Division.

May 4, 1932.

Argued before DREW, STEPHENS, and TALIAFERRO, JJ.

Wise, Randolph, Rendall & Freyer, of Shreveport, for appellant.

Blanchard, Goldstein, Walker & O'Quin and Herold, Cousin & Herold, all of Shreveport, for appellees.

TALIAFERRO, J.

Plaintiff foreclosed upon its mortgage given by Medical Arts Company, Inc., owner, against the Medical Arts Building in the City of Shreveport. While the property was under seizure and in the hands of the sheriff, the Medical Arts Drug Store, Inc., one of the tenants in the building, paid rents to the City

Savings Bank & Trust Company, holder of certain rent notes which the tenant had given to the owner and which said owner had sold and assigned to the bank. Plaintiff, contending that it was entitled, as seizing creditor, to this rent, brought this suit against the tenant, the owner, and the sheriff, Thomas R. Hughes, to recover same, aggregating the sum of $1,026, alleged to have been paid while the property was under seizure.

Plaintiff alleges it was and still is entitled to these rentals under the plain provisions of article 466 of the Civil Code, which reads:

"The fruits of an immovable, gathered or produced while it is under seizure, are considered as making part thereof, and inure to the benefit of the person making the seizure."

It is alleged, in substance, that the sheriff is liable because he neglected to collect and preserve for plaintiff the rents thus accrued and which was his mandatory duty to do under article 656 of the Code of Practice, which provides that:

"When the sheriff seizes houses or lands, he must take at the same time all the rents, issues and revenue which this property may yield."

The Medical Arts Drug Store, Inc., is sought to be held by reason of its obligation as tenant, and the bank, it is alleged, should be compelled to pay over to plaintiff the amount of the rents illegally received by it from said tenant.

Plaintiff alleges, and the testimony shows, that there was left unpaid on its mortgage claim, after applying thereon the proceeds of the sale of the property, a sum in excess of the amount of the rents in question. Judgment was prayed for against all three defendants in solido for the full sum alleged on, with legal interest from March 1, 1930, until paid.

Exceptions of no cause or right of action were filed in limine by each of the defendants, but were overruled.

The defendant Medical Arts Drug Store, Inc., filed answer of general denial, and averred that it paid the rents to the bank, which it had a right to do, because of the fact that the bank held the rent notes which it had executed to its lessor, the owner, and which said lessor had sold to the bank. It is further averred that it, said tenant, was instructed by the sheriff, the legal custodian of the property, to pay the rents to said bank, and therefore this defendant pleads payment, under the instructions from the sheriff, in bar of plaintiff's right of recovery.

The sheriff and the defendant bank answered denying any liability whatever, and averred, in substance, that the rents in question were properly paid to the defendant bank for the reason that the contract of

lease, under which the rents accrued, was executed and recorded prior to the time plaintiff took its mortgage; that the rent notes representing the monthly rentals on the property were executed in connection with the rent contract (although at a later date than that of the contract itself); that said notes were for a valuable consideration, assigned by the lessor, under authentic act, to the said bank prior to the date of said mortgage; that plaintiff therefore accepted the mortgage subject to the resulting effect of the recorded contract of lease and the rights of the bank as holder of the notes; that the bank thus being the holder and owner of the notes, payment of same was properly made to it.

From a judgment rejecting plaintiff's demands it has appealed.

The Medical Arts Building Company, Inc., as owner, executed a contract of lease under private act, of date January 3, 1928, unto Florence & Nossek, a partnership composed of M. E. Florence and S. S. Nossek, represented by the former, wherein they secured a 50-year lease upon a certain part of the Medical Arts Building, at an annual rental of $9,000, payable in monthly installments of $750 in advance, on the 1st of each month. This contract was filed and recorded April 19, 1929. There were no notes executed to represent the rent payments, and none mentioned in the contract. On March 21, 1928, Florence & Nossek, under similar act, and on the same basis as to price per annum and terms of payment, leased the property for a period of ten years to the Medical Arts Drug Store, Inc., a corporation apparently formed by these partners for that particular purpose; so that the occupancy of the premises was continued by the same tenant but under a different name. This contract was never recorded.

On April 2, 1929, Florence & Nossek executed and delivered to the Medical Arts Building Company, Inc., their lessor, ten promissory notes, each for the sum of $750, bearing 7 per cent. per annum interest from maturity, maturing monthly, beginning April 10, 1929, and reciting "for value received, in consideration of lease contract between the maker and payee hereof of date, January 3rd, 1928, duly recorded, I promise to pay subject to the terms and conditions of said lease, to the order of Medical Arts Building Company, Inc. ——." On April 3d following, the Medical Arts Building Company, Inc., by notarial act assigned, indorsed in blank, and delivered said ten notes to the City Savings Bank & Trust Company, for the recited consideration of $7,500. No record was made of the assignment. The only record made of any of these transactions was that of the original contract of lease of the 3d of January, 1928. This document did not call for or mention the giving of any notes whatever, but merely stipulated the payment of cash

monthly installments. It did, however, stipulate for interest and attorney's fees in like amounts and tenor as was stipulated in the notes when they were executed some fifteen months later.

On July 26, 1929, some four months after the sale and assignment of the notes to defendant bank, plaintiff accepted from the lessor, owner, a mortgage on the entire Medical Arts Building, upon which it foreclosed by seizure thereof on January 17, 1930, and the property sold March 1st following.

It appears that the note falling due January 10th was paid prior to date of seizure, and the claim for the portion called for by it accruing after the seizure, viz.: $276, has been abandoned by plaintiff, which leaves the one whole note for $750 paid February 14th alone in contest. Defendants contend that Civ. Code, art. 466 and Code Prac. art. 658 should be construed in connection with other laws, and specially the law of registry as embraced in article 2266 of the Civil Code; that rent stipulated in a contract of lease is a debt due by the lessee, subject to assignment, as any other debt; that a contract of lease and rights arising out of such a contract are incorporeal rights of the nature of which the transfer is regulated by articles 2642 and 2643 of the Civil Code; and that the transfer is fully perfected against third persons from the time of notice to the debtor (citing Gottlieb v. Schloss, 5 La. App. 379). Defendants' counsel in briefs cite numerous decisions on these as well as other laws which it is contended are in support of their position.

Plaintiff takes the position that due to the fact that the recorded lease contract did not call for notes, but merely for the payment of monthly rentals for which no notes were stipulated, plaintiff (having no knowledge of the existence of the notes) presumed, as it had the right to do, that there were no outstanding notes and its rights to the rents, in event of seizure, could not be thereby affected.

It is further contended by plaintiff that the notes were not negotiable notes, as evidenced by the reference in them to the lease contract, and could not be negotiated. While contending, however, that the laws of registry do not apply in this case, plaintiff contends that even if they do apply, the case should be decided in its favor, citing article 2264 of the Civil Code, which provides that no notarial act concerning immovables shall have effect against third persons until deposited for registry; that this law applies to lease contracts because they pertain to immovables. As we understand it, plaintiff has reference here to the assignment by the owner to the bank of the notes, which was a notarial act but not recorded. But defendants contend that recordation of this assignment was not essential; that the original contract of lease, which was recorded, is all that was necessary to be recorded. Numerous de-

cisions of the Supreme Court are cited by plaintiff. Neither the judge, nor parties to this litigation appear to have found a case on all fours with this one. In some instances the same cases are cited and relied on by both parties. The trial judge states in his written opinion that he is unable to convince himself that article 2264 of the Civil Code does not apply. After a somewhat lengthy opinion originally and again on application for a rehearing, which he refused, he says: "We think the entire matter harks back to the question of registry."

It does seem that in all of the decisions on the question of the comparative rights of tenants and seizing creditors of the lease—held, so far as have been adjudicated upon—the question of registry plays an important part.

In Summers & Brannins v. Clark, 30 La. Ann. 436, cited and discussed at length by both plaintiff and defendants, the court quotes thus from Civ. Code, art. 2264, "No notarial act concerning immovable property shall have any effect against third persons," unless recorded in the conveyance office, and then concludes as follows:

"These are negatives pregnant with affirmatives to the effect that contracts 'affecting' or 'concerning' immovables (and therefore leases thereof), will have effect against third persons, if duly recorded; just as sales, mortgages, etc., affect them when recorded. It would seem that where a lease of real estate has been made in good faith *and duly recorded*, a creditor of the lessor, seizing the property, will take it subject to the rights of lessee under the contract, unless the seizing creditor have a mortgage or privilege *anterior* to the *registered* lease. If, in such a case, the tenant have paid his rents in advance for the whole term, either in cash or in negotiable notes, the seizing creditor, having no anterior mortgage or privilege, can not, nor can any subsequent purchaser, exact rents until the expiration of the term." (Italics ours.)

In the above case the tenant had a written contract of lease but not recorded. The court, however, makes it plain that if the contract had been recorded the lessee would have been protected from the seizing creditor and would not have had to pay rent to said creditor. He had given "negotiable" rent notes, presumably at the time of, and in connection with, the contract. He had paid in advance the note covering rent for the period during which the property was under seizure. The court held that the giving of rent notes should be considered the same as paying rent in advance. Yet, due to the failure of registry of the contract, the tenant was compelled to pay again the rent accrued during seizure.

Such was the holding of the court in spite of Civ. Code, art. 466, and Code Prac. art. 656. In fact, it was by reason of the provision of these articles that the court recognized the seizing creditor's right to the rent and the duty of the sheriff "to take them." And in the very teeth of this the court said in effect that if the tenant had not his lease contract timely recorded the creditor would have had no such right.

The point is made by plaintiff that the court referred to the notes in the cited case as being negotiable notes, whereas in the present case they were nonnegotiable. We can see no difference this could make in this case. The notes were in fact sold, assigned, and delivered for a valuable consideration before maturity, and, so far as the record shows, in perfect good faith. If there was any bad faith practiced, it most likely was on the part of the lessor in not revealing to plaintiff the existence of the notes and the fact of their assignment to a third party. Certainly neither the tenant nor the bank was a party to the act of mortgage and their rights could in no way have been prejudiced thereby, provided the tenant had not neglected the formality of having his contract of lease recorded. Civ. Code, art. 2015.

The fact that the notes cannot be classed in that of negotiable notes did not prevent the holder from selling and assigning them. The purchaser obtained a good title to them, subject only to the conditions and stipulations in the lease contract to which they refer, and subject to its being timely recorded. The reference in the notes to the contract had the effect of reading, so to speak, the contract into the notes. Lesseigne v. Cedar Grove Realty Co., 150 La. 641, 91 So. 136.

We also think that so long as the contract was of record there was no necessity for placing of record the assignment of the notes. Because a contract of lease, in order to be effective against third persons, must be recorded, it does not necessarily mean that an assignment of the rentals or rights under the lease must be recorded. The rights under the contract, or the rents due or to become due thereunder, do not fall under the class with immovables, hence the laws of registry do not apply. Such rights are heritable, incorporeal, and, under Civ. Code, art. 2009, may be assigned, and we think, without necessity of registry of the assignment.

After all, it appears to us this case, as held by the lower court, is determined by the fact of registry vel non of the contract of lease. Its registry antedated the registry of plaintiff's mortgage, therefore is not affected by it.

We can see no reason why the rule should not apply in favor of the tenant just as it does the seizing creditor. In Barelli v. Szymanski, 14 La. Ann. 47, the tenant had given negotiable rent notes to his lessor who had assigned them to a third party. The lessor's mortgage creditor foreclosed on the mortgage which was on record when the lease was executed, and claimed rents accrued dur-

ing seizure. The tenant had previously paid the rent note in the hands of the third party, therefore pleaded payment. The court held that the tenant had not paid to the right party and compelled him to pay again; also held that the third party, holder of the note, had the right to demand and receive payment. And held that future rents may become due and payable to third persons, but, says the court:

"Whenever a lessee give his negotiable notes for the payment of future rents, he incurs the risk, if the property has been *previously* encumbered, of having to pay the notes to a bona fide holder, and also the rents for which they were given, to a third person." (Italics ours.)

It appears plain that the seizing mortgage creditor's right to the rents was based upon the priority of his mortgage in point of time and registry. The converse, we take it, would be true if the tenant's contract had antedated the mortgage, and been of record. In such a case it would be considered that the mortgagee took his mortgage at his own risk and could not have claimed the rent as against the third party. Besides, plaintiff in the present case, having notice from the records of the outstanding lease, even though the contract did not stipulate for notes, could have required an assignment from the owner of its rights to rents in event of a foreclosure. Plaintiff knew, or should have foreseen, such an eventuality as did happen and could have guarded itself against the risk of its happening.

There are numerous decisions of the courts of this state holding the rights of a lessee under a recorded contract of lease inviolate under the provisions of article 2266 of the Civil Code, as against subsequent purchasers of the leased property. Lewis v. Klotz, 39 La. Ann. 259, 1 So. 539; Flower et al. v. Pearce & Son, 45 La. Ann. 856, 13 So. 150; Payne v. Pavey, 29 La. Ann. 116; Porche v. Bodin, 28 La. Ann. 761.

We have been unable to find any decision, and have been cited to none, which enables a seizing creditor under a mortgage posterior to a recorded lease to recover rents accrued during the period of seizure, which had been assigned in notes or otherwise by the lessor to and held at the time by a third person. We think the tenant under such circumstances is justifiable under the law of registry in paying his rent obligation into the hands of such third party and that party may rightfully demand and receive payment.

A deed of sale or act of mortgage, not recorded or filed for record, cannot affect third parties; but if recorded or filed for record it does. The same rule, we think, applies to contracts of lease. An unrecorded lease and payment of rents by anticipation or giving negotiable notes therefor does not release the

lessee from liability to the seizing creditor. Civ. Code, art. 2266; Summers v. Clark, 30 La. Ann. 436; Anderson v. Comeau, 33 La. Ann. 1119.

We think it equally true that the lessee is released from liability in such a case where his lease is recorded anterior to the mortgage, whether the notes which he gave were negotiable or nonnegotiable, or whether there was or not a formal recorded assignment of the notes.

For the reasons herein assigned, the judgment of the lower court is affirmed.