(38 South. 410.)

No. 15,402.

MUNTZ v. ALGIERS & G. RY. CO.

(April 10, 1905.)

DEMAND IN WARRANTY—PRIVITY BETWEEN PARTIES—EFFECT OF STIPULATION.

1. It is impossible to sustain the proposition that the right of a defendant to call in a warrantor depends upon the question of privity vel non between such warrantor and the plaintiff in the main action, and equally impossible to deny that, as a basis for the exercise of such right, there must be a contract of warranty between such defendant and the person so called in.

2. A stipulation pour autrui, when accepted, may establish the contract required as the basis for a call in warranty.

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; Thomas C. W. Ellis, Judge.

Action by George Muntz against the Algiers & Gretna Railway Company and the Jefferson Street Railway Company. Dismissed as to the Jefferson Street Railway Company. From an order refusing to call in certain parties in warranty, the defendant appeals. Reversed.

Frank Edward Rainold and McCloskey & Benedict, for appellant. Alfred E. Billings, for appellee warrantors. W. J. & P. F. Hennessey, for appellee George Muntz.

Statement.

MONROE, J. Plaintiff brought suit in the civil district court for the parish of Orleans against the Algiers & Gretna Railway Company and the Jefferson Street Railway Company to recover damages for injuries sustained by, and resulting in the death of, his minor child, who, as he alleges, was negligently run over by a street car belonging to a line operated conjointly by the two defendants between the parishes of Orleans and Jefferson. The suit was dismissed, as to the Jefferson Street Railway Company on the ground that, the defendant being domiciled in the parish of Jefferson, the district court for the parish of Orleans was without jurisdiction ratione personæ; and as to the Algiers & Gretna Railway Company, on the ground that it had leased out the road upon which the injury was sustained, and was not liable for the negligence of the lessee. That judgment was reversed on appeal, and the case remanded. Muntz v. Algiers & G. Ry. Co., 111 La. 423, 35 South. 624, 64 L. R. A. 222, 100 Am. St. Rep. 495. Thereupon the defendant the Algiers & Gretna Railway Company answered, denying liability; setting up certain contracts, to which Anthony Rouprich, Mrs. Ella Mills, and the Jefferson Street Railway Company are parties, and praying, by virtue thereof, that they be called in warranty. To the call so made, the parties named pleaded the exceptions no cause of action and res judicata, and, the exception first mentioned having been sustained, and the call dismissed, the Algiers Company has appealed.

For the purposes of the call in warranty, the Algiers Company alleges that Anthony Rouprich leased its road, and agreed to operate the same at his own risk and ex-

pense; that Mrs. Mills bound herself as his surety; and that the Jefferson Company subsequently assumed said contract. And the several contracts referred to are made a part of the petition. For the purposes of the exception, the following facts are to be taken as true, to wit:

In 1882 the defendant corporation was established, and acquired certain railway franchises on the right bank of the river, originally granted to Albert Baldwin, William Bogel, and others. In March, 1893, Bogel, professing to act as the authorized agent of the corporation, leased the franchises so acquired to Thomas Pickles. In 1895 "or thereabouts" Pickles died, and in 1897 his heirs, Mesdames Harvey and Halliday, subleased the franchises in question to Peter Meid by a notarial act containing the following among other stipulations, to wit:

"Said lessee assumes, and obligates himself to perform, all the obligations resting upon the Algiers & Gretna Railway Company by reason of said franchise. * * * This lease is made subject to all the conditions and obligations resting upon the Algiers & Gretna Railway Company and the heirs of Thomas Pickles, as stated in the franchise under and by virtue of which the Algiers & Gretna Railway is operated."

In January, 1899, Peter Meid, with the consent of his lessors, subleased the property (or, rather, transferred the contract) to Anthony Rouprich, by a notarial act from which we make the following excerpts:

"Peter Meid * * * declared that he does * * * sublease unto Anthony Rouprich * * *: First. All the franchises of the Algiers & Gretna Railway Company, including its roadbed and the right to operate a railway * * *. Second. The stables and real estate * * *. Third. All the cars * * * and the entire equipment of the road."

The consideration of the lease is then stated to be the assumption by Rouprich of the obligations imposed upon Peter Meid by the terms of the contract previously entered into between him, on the one part, and Mrs. Halliday and Mrs. Harvey, on the other part; and those two ladies make themselves parties and give their consent to the contract, as follows, to wit:

"And now hereunto * * * appeared Mrs. * * * Harvey and Mrs. * * * Halliday, * * *" through their representatives, "and declared that they consented to the sublease by Peter Meid to Anthony Rouprich * * *; the said Rouprich to be liable to said Mrs. Harvey and Mrs. Halliday, directly, in the place and stead of Peter Meid, and to perform all the obligations and to comply with all the conditions imposed upon said Peter Meid by said contract of lease. It is, therefore, the intention of all parties to this contract that the said Anthony Rouprich shall be directly liable to the said Mrs. Harvey and Mrs. Halliday as if he was a party to said notarial contract, in the place and stead of Peter Meid * * *. Now, the said Mrs. Harvey and the said Mrs. Halliday * * * hereby grant an extension and renewal of the aforesaid lease to the said Anthony Rouprich for five years, beginning on the 9th day of September, 1902, and ending on the 9th day of September, 1907, on the same terms and conditions as set forth in the aforesaid notarial contract of lease, except as may be hereinafter provided."

Then follow certain stipulations concerning the amount of rent and manner and time of payment, after which the contract proceeds:

"It is further agreed and understood that the said Anthony Rouprich binds and obligates himself to run and operate said railroad entirely at his own expense, and to pay all damages which may be occasioned by the running of said railroad, or, by the condition of said tracks, and defend all suits that may be brought against said railroad, and to pay all legal expenses, including attorney's fees, which may be occasioned by the running and operating of said railroad. It is further agreed * * * that, in all matters arising out of, or in connection with, this contract, the said Anthony Rouprich, together with his surety * * *, consent to be sued in the Parish of Orleans, and to abide by any judgment that may be rendered in the Parish of Orleans."

A few months later, in April, 1899, Rouprich, by notarial act, sold to the Jefferson Company all the rights acquired by him under the contract from which the foregoing excerpts are taken, and the Jefferson Company assumed all his obligations under that contract, without, however, releasing him as to the obligees, Mrs. Harvey and Mrs. Halliday, who are not parties to the sale so made. After the Jefferson Company had

been dismissed from this suit, the plaintiff brought another suit against it in the district court for the parish of Jefferson, which has been tried on its merits, with the result that there was judgment for the company, the delay for an appeal from which has expired without an appeal having been taken; and it is upon the judgment so rendered that the company predicates the exception of res judicata pleaded by it as against the call in warranty.

The judge a quo sustained the plea of no cause of action, and did not pass upon the plea of res judicata, and the defendant prosecutes this appeal from his judgment.

### Opinion.

The exception of no cause of action is based upon the propositions (1) that this is an action sounding in tort, and that tort feasors are not the warrantors of each other; and (2) that there is no privity between the plaintiff or the defendant in the main cause and the alleged warrantor.

1. For the purposes of the exception, it must be assumed that the facts are as stated in the pleadings of the defendant (plaintiff in warranty), rather than as alleged in the petition of the plaintiff in the main cause, and the defendant has not alleged or admitted any tort on its part. It is true that the call in warranty presupposes a possibility that it may be proved on the trial that the injury complained of was the result of negligence, and that this court has already held that, if that be so, the defendant may be compelled to respond in damages to the person injured, but it does not follow that such negligence will be brought home to the defendant; nor has it been held that the defendant, if condemned for the negligence of another, may not obtain from the person through whose fault it happens indemnity for the damages it may be compelled to pay, and this though there be no special contract to that effect. Thus it has been decided

that, whilst both the lessee and the owner of a slave were liable for injuries sustained by a third person from the negligence of the slave, the lessee was entitled to recover from the owner the amount that he was compelled to pay (Fitzgerald v. Ferguson, 11 La. Ann. 396), and that, though the master is liable to a third person for the negligence of his servant, he may, if not himself in fault, recover from the servant the damages for which he is condemned. Costa v. Yochim, 104 La. 170, 28 South. 992. There is no doubt, therefore, that the actual tort feasor may be compelled to reimburse his innocent codefendant, made liable by operation of law, whatever amount the latter may be compelled to pay as damages resulting from the tort. See, also, Thompson v. Chauveau, 6 Mart. (N. S.) 458; Enders et al. v. Str. Hy. Clay & Owners, 8 Rob. 30. Whether, in the absence of a contract, such reimbursement can be enforced by means of a call in warranty, is a question which is not involved in this case, since the defendant now before the court predicates its call in warranty upon a contract, the validity of which is not attacked by the alleged warrantor.

2. It is said that there is no privity between the plaintiff in the main cause and the Jefferson Company, and hence that the defendant cannot call the latter in warranty. Privity is the relation between persons as to whom there exists some connection, as by blood, representation, estate, or contract, and it would seem to be the antithesis of the relation existing between a person complaining of a tort and him by whom the tort has been committed. Thus there can hardly be said to be any privity between a person who is assaulted and him by whom the assault is committed. Considering the matter with reference to its bearing upon the question here at issue, our Code of Practice contains 10 articles under the title, "Of Demands in Warranty," and the word "privity" is not mentioned in any of them, and yet it may

be assumed that the framers of those articles were not unfamiliar with its meaning. The articles read in part as follows:

"Art. 378. The obligation which one contracts, to defend another in some action which may be instituted against him is termed warranty. The one who has contracted this obligation is called the warrantor.

"Art. 379. Warranty may be of two kinds, real, or personal. * * * Personal warranty is that which takes place in personal actions; it arises from the obligation which one has contracted to pay the whole, or a part, of a debt due by another to a third person.
 *      *      *      *      *      *      *

"Art. 382. The defendant wishing to call one in warranty, may, in his answer, pray the court to decree against his warrantor the same judgment which may be rendered against him on the principal action. Such prayer will be considered a demand in warranty."

"Art. 384. The delay granted to call the warrantor must be the same as that given to such warrantor to answer. * * *"

"Art. 387. If one called in warranty has, himself, a warrantor, who is bound to defend him, he may, also, in his answer, pray that his warrantor be cited to appear in the suit; he shall be entitled * * * to the same delay granted to the defendant for calling his warrantor; the same rules shall govern if there be a greater number of warrantors. * * *"

In Anselm v. Wilson, 8 La. 37, the defendant, being sued on a promissory note, alleged that she had paid the amount to one Erwin, who "had promised to save her harmless against the note, and became her warrantor," and she prayed that he be called in warranty; but the trial court, on motion of the plaintiff, presumably, denied the request. On the appeal, Mr. Justice Bullard, as the organ of this court, said:

"We are of opinion that the court did not err. This does not, in our opinion, present a case of simple or personal warranty, within the meaning of that part of the Code which authorizes delay for the calling in of the warrantor. There does not appear to have existed any privity between the plaintiff and Joseph Erwin, who was a stranger to the contract sought to be enforced. Code Prac. art. 379 et seq.; 5 Merlin's Reps., verbo 'Guarantie Simple.'"

In Butler v. Stewart, 18 La. Ann. 554, the defendant, as in the preceding case, was sued on a promissory note. He asked to be allowed to call in warranty one H. Rabrun, who had given his written obligation to pay

the note. The request was refused, and this court affirmed the ruling, saying, "There is no privity between plaintiff and this H. Rabrun. [Citing] Anselm v. Wilson, 8 La. 37," supra.

In Levy v. R. Co., 35 La. Ann. 615, the plaintiff sued defendant for loss sustained on a lot of mules which defendant had undertaken to deliver to him, and which had been damaged in transit over a line by which defendant had reshipped them. This court held, in view of the facts disclosed, that the defendant had made the line over which the mules were actually transported, pro hac vice, its own, and, concerning its request to be allowed to call that line in warranty said:

"In the absence of all privity between the plaintiff and the party so called in warranty, semble that it is not a proper case for such a call, under the provisions of Code Prac. art. 379. Anselm v. Wilson, 8 La. 37; Howrin v. Clark, 8 Rob. 27; Wesson v. Garrison, 8 La. Ann. 136, 58 Am. Dec. 674."

In Frost v. Harrison, 8 La. Ann. 123, which was a suit on a bill of exchange, the court found that there was no privity between the alleged warrantor and the defendant; and in Hardy v. Sheriff et al., 104 La. 136, 28 South. 936, though the language used in the opinion in Levy v. Railroad Co., supra, is quoted as authority, the fact found is that there was no privity of contract between the alleged warrantors and the party who sought to call them into the case.

Upon the other hand, in Lafonta v. Poultz, 6 Mart. (N. S.) 391, the defendant, who was sued as indorser of a note, disavowed his signature, whereupon the plaintiff caused to be cited in the same action the person from whom the note had been acquired. The court, through Martin, J., said:

"There is a close analogy between this case and that of a vendee and warrantor. The same reason supports them both. A multiplicity of actions and delay are avoided by the mode referred to, and the best possible means is afforded to the party brought in to establish the genuineness of the paper sold, and it is very difficult to discover on what ground this mode of proceeding may be injurious to him."

In Kirkpatrick v. McMillen et al., 14 La. 497, the defendants were sued as makers and indorsers of a promissory note given in payment of the price of certain town lots which the purchaser had in the meanwhile sold to other parties, by whom the payment of the notes had been assumed; and the defendant was allowed, without objection, to call those parties in warranty.

In Brown's Ex'rs v. Copley, 19 La. 474, defendant was sued on a note given for the price of a slave. He asked to be allowed to call in warranty one Peck, to whom he had sold the slave, and who, as he alleged, had agreed to pay the note, and the request was denied. On appeal it was said:

"The articles 379, 380, and 381 of the Code of Practice seem too clear and imperative to admit of doubt or construction. In the case of Anselm v. Wilson, 8 La. 37, it was held, as there was no privity between the plaintiff and Erwin, who was to reimburse the note to the defendant, that delay would not be accorded to call him in. The agreement in that case was not that Erwin would pay the plaintiff the defendant's debt, but, in case she had to pay it, he (Erwin) would reimburse her. The contingency in that case was not to operate on Erwin until it was known whether defendant had to pay. The court in that case went as far as it well could to avoid the effect of a positive law, which, in its operation, in the country, is calculated to produce delay in the collection of debts and considerable embarrassment to creditors."

This language was repeated in the similar case of McClure and another, Exctrs, v. Copley, 1 Rob. 133. In Foster v. Baer, 6 La. Ann. 442, the plaintiff sued for loss on a lot of pork, which, having been purchased as sound, turned out to be sour. This court said:

"The defendants had a right to call their vendors in warranty, * * * and did so, but did not cause the suit to be put at issue between them by judgment by default, or otherwise obtaining an answer, so that no judgment can be rendered against them. The case must be remanded for further proceedings as to them. The defendant also called the inspectors in warranty, and, * * * if the case could be finally disposed of, we should be inclined to render judgment against them."

In Oliver v. Bry, 7 La. Ann. 790, it appeared that Day & Beasley gave two notes in payment of the price of certain real estate, which notes became the property of Millaudon; that Day died, and that Millaudon provoked the sale of his interest in the property for the payment of said notes; that the property. failed to realize the appraisement, and was sold on credit to the defendants, who gave the notes sued on in payment of the price; that Millaudon thereafter sued Beasley on the original notes of Day & Beasley, and sold his half of the property, but not for enough to pay his half of the debt. The defendants set up that the sale at which they purchased was made to pay both of the Day & Beasley notes; that the price bid by them was to go to Millaudon, and that they had purchased from Millaudon his right thereto, and to said notes; and they asked that Millaudon be called into the suit, which was done. Millaudon thereupon excepted to the jurisdiction on the ground that he was a resident of another parish, which exception was overruled. In passing on the merits, this court said:

"Now, if Millaudon sold the notes of Day & Beasley to the defendants, and also the fund which was to be applied to their payment, as alleged, * * * he contracted an obligation to warrant the defendants against a suit for that fund for his benefit, and, though the action be personal, might be called in warranty. Code Prac. arts. 378, 379."

It is unnecessary to cite authority in support of the proposition that the defendant in a petitory action, alleged to be in unlawful possession, under an insufficient adverse title, or without title, may call in warranty those from whom he has derived such title as he sets up, unless warranty be therein expressly disclaimed; his right so to do depending not upon any question of privity between such persons and the plaintiff, but upon the terms of their contract with the defendant.

There is no doubt that some confusion and apparent conflict of authority exist upon the question at issue, but, whether dealing with the text of the law alone, or as interpreted.

by what we conceive to be the best-considered opinions, we find it impossible to sustain the proposition that the right of a defendant to call in a warrantor depends upon the question of privity vel non between such warrantor and the plaintiff in the main action, and equally impossible to deny that, as the basis for the exercise of such right, there must be a contract of warranty between such defendant and the person so called in. The remaining question therefore is whether such contract exists between the defendant now before the court and the exceptor.

The exceptor is the sublessee of a railroad of which the defendant is the owner. By the terms of its contract, it assumed all the obligations of the latter with respect to the use of its (the owners) franchises, and it further agreed and bound itself, among other things, "to run said railroad entirely at [its] own expense and to pay all damages which may be occasioned by the running of said railroad, or by the condition of the track, and defend all suits that may be brought against said railroad, and to pay all legal expenses, including attorney's fees, which may be occasioned by the running and operating of said road." We say that the exceptor agreed to these conditions because they were contained in the lease to its lessor, Anthony Rouprich, and the contract by which it became sub-lessee contains the stipulation:

"It is understood that the Jefferson Railway Company assumes all the obligations which rest upon Anthony Rouprich under said notarial contract."

It is true that the defendant, the owner of the railroad, was not in terms made a party to this contract, or to that which preceded; but the stipulations were for its benefit, and related to matters with respect to which it and the other contracting parties were and are equally bound to the public, and its acceptance of those stipulations is evidenced by its acquiescence in the exceptor's use of its property, and in the demand in warranty which is the subject of this opinion. Vinet, Ex'r, v. Bres & Richardson, 48 La. Ann. 1254, 20 South. 693; Twichel v. Andry, 6 Rob. 410; Bell v. Lawson, 12 Rob. 152. For these reasons, we are of opinion that the exception of no cause of action should have been overruled. No other question being presented by the appeal, it is ordered, adjudged, and decreed that the judgment appealed from be annulled, avoided, and reversed, and that this case be remanded to the district court, to be proceeded with according to law; the exceptors (appellees) to pay the costs of the appeal.