## VOLUME 141

## CASES ARGUED AND DECIDED IN THE SUPREME COURT OF LOUISIANA

### AT TERM BEGINNING FIRST MONDAY OF OCTOBER, 1916

(74 South. 569)

No. 22191.

HARWOOD–BARLEY MFG. CO. v. ILLI-
NOIS CENT. R. CO.

(Feb. 12, 1917. Rehearings Denied March 12,
1917.)

*(Syllabus by the Court.)*

1. CARRIERS ☞83, 93 — MISDELIVERY OF
GOODS—LIABILITY.

A railroad company received for shipment
freight consigned to "shipper's order, notify J.
E. H. & Co." The bill of lading indorsed by
the shipper was forwarded to a bank at the
place of delivery, attached to a sight draft on
the purchaser for the invoice price of the freight.
The carrier delivered the freight to J. E. H. &
Co., without the surrender or production of the
bill of lading, on an indemnity bond to protect
the railroad company. Because of a misunder-
standing as to the terms of the sale, J. E. H. &
Co. did not pay the draft, and the bill of lading
was returned to the shipper. He sued the rail-
road company for the value of the goods, fixed
in the bill of lading as the bona fide invoice
price. The defendant called in warranty the
principal and surety on the indemnity bond;
and the latter contended, as a defense to the
main action on the bill of lading, that the rea-
son why the purchaser had not paid the draft
or obtained the bill of lading was that the ship-
per had violated his contract with the purchaser.
The plaintiff objected to the introduction of any
evidence in support of that defense to the main

action. *Held*, that the railroad company could
not relieve itself of its liability on the bill of
lading to the shipper by taking an indemnity
bond in lieu of the bill of lading and delivering
the freight to one who was not entitled to re-
ceive it without producing and surrendering the
bill of lading, and that the defendant and war-
rantors could not inject into the suit, as a de-
fense to the main action on the bill of lading,
the complaints which the purchaser of the
freight had against the shipper.

[Ed. Note.—For other cases, see Carriers,
Cent. Dig. §§ 299, 308–315, 356–362.]

2. CARRIERS ☞83—MISDELIVERY OF GOODS—
ACTION BY SHIPPER—EXCUSE.

The doctrine that a common carrier, when
sued by the holder of a bill of lading for the val-
ue of freight received by the carrier for ship-
ment, may show, as an excuse for having deliv-
ered the freight to another party without re-
quiring the surrender or production of the bill
of lading, that the party to whom the goods were
delivered on demand was the true owner, is
founded upon the principle that a bailee of prop-
erty received from a bailor who was not the own-
er cannot acquire any greater right to with-
hold the property from its lawful owner than if
the bailee had bought the property from one
who was not the owner. But that doctrine has
no application to a case where the party to
whom freight was delivered by a common carrier
was not the holder or owner of the bill of lading
and had no right to receive the goods without
the bill of lading.

[Ed. Note.—For other cases, see Carriers,
Cent. Dig. §§ 308–315.]

2

Appeal from Civil District Court, Parish of Orleans; E. K. Skinner, Judge.

Action by the Harwood-Barley Manufacturing Company against the Illinois Central Railroad Company, which called in warranty J. E. Hirschberg & Co. as principal and Max Schwabacher as surety on an indemnity bond, and sought a judgment over against such principal and surety in solido for the amount of any judgment rendered against it. Judgment for plaintiff against defendant, and judgment for the same amount in favor of defendant against the principal and surety on the indemnity bond in solido, and the defendant and the principal and surety on the indemnity bond appeal. Judgment amended by reserving to the warrantors whatever right of action they may have against the plaintiff, and, as so amended, affirmed.

Hunter C. Leake and Gustave Lemle, both of New Orleans, and Blewett Lee and R. V. Fletcher, both of Chicago, Ill., for appellant. Dart, Kernan & Dart, of New Orleans, for appellee. Solomon Wolff, of New Orleans, for warrantors.

O'NIELL, J. In February, 1915, the Harwood-Barley Manufacturing Company, of Marion, Ind., entered into a written contract with J. E. Hirschberg & Co., of New Orleans, for the sale and shipment of five automobiles to the latter at the price of $2,975 each—that is, $14,875 in all. The purchaser paid $500 in cash when the contract was signed, of which $100 was to remain on deposit until shipment of the last car, according to the terms stated in the contract. The contract provided that $400 was to be paid 30 days before shipment of each car, $475 on the arrival of each car, and the balance of the price of each car, $2,100, was to be payable in ten equal monthly installments, bearing 8 per cent. interest. The first car was to be shipped as soon as possible, and the other four were to be shipped as ordered by the purchaser, at intervals not less than 30 days for each car. On or about the 26th of March, 1915, J. E. Hirschberg & Co. made a further remittance of $200 to the Harwood-Barley Manufacturing Company, and on the 9th of April, 1915, instructed the latter to apply the payment to the price of the first car to be shipped, and draw the sight draft, to be attached to the bill of lading, for $275, instead of $475.

On the 27th of April, 1915, the first car was shipped, and was routed over the Illinois Central Railroad. It was consigned to the order of the Harwood-Barley Manufacturing Company, of New Orleans, La., with instructions to notify J. E. Hirschberg & Co., in that city. The invoice was made out accordingly, and delivered to the shipper.

On the 27th of April, 1915, the Harwood-Barley Manufacturing Company indorsed the bill of lading in blank, attached it to a sight draft on J. E. Hirschberg & Co. for $275, together with ten notes for $210 each, due 30 days apart, to be signed by J. E. Hirschberg & Co., and forwarded the same to the Canal Bank & Trust Company, in New Orleans. In the letter inclosing the bill of lading, sight draft and notes, the bank was requested to have the notes signed and returned with the proceeds of the draft, and to have the attorneys of the bank prepare a chattel mortgage or conditional bill of sale, according to the laws of Louisiana, to secure the payment of the notes. On the same day the Harwood-Barley Manufacturing Company wrote to J. E. Hirschberg & Co. inclosing an invoice for the car and advising the latter that the sight draft for $275, and the ten notes of $210 each, with bill of lading attached, had been forwarded to the Canal Bank & Trust Company, with instructions to prepare a chattel mortgage on the automobile to secure the payment of the notes. The letter contained the information that the automobile had been shipped on the 23d of April, routed over the

Illinois Central Railroad, and gave the number of the railroad car on which it was shipped.

The car arrived in New Orleans on the 29th of April, 1915, and J. E. Hirschberg & Co. were promptly notified of its arrival. They had not yet received the letter advising them where the bill of lading was sent, nor had the bank received the bill of lading. Having inquired at a number of banks, and failing to locate the bill of lading, J. E. Hirschberg & Co. requested the railroad company to deliver the automobile without the production of the bill of lading; and the railroad company consented to do so on an indemnity bond. Accordingly, on the 30th of April, 1915, J. E. Hirschberg & Co. signed and delivered to the railroad company an indemnity bond for $3,000, signed by Max Schwabacher as surety, and received the automobile. The condition of the bond was that J. E. Hirschberg & Co. should deliver the original bill of lading to the railroad company within 30 days, and protect, defend, and hold harmless the railroad company from all liability and from every loss, damage, injury, expense, and costs, including attorney's fees, that the railroad company might become liable for or suffer by reason of the surrender of the automobile to J. E. Hirschberg & Co. without the bill of lading.

On receipt of the sight draft with notes and bill of lading attached, on the 3d of May, 1915, the Canal Bank & Trust Company returned them to the Harwood-Barley Manufacturing Company, because the bank was unwilling to take the responsibility of obtaining the chattel mortgage to secure the payment of the notes, as requested by the Harwood-Barley Manufacturing Company.

A member of the firm of J. E. Hirschberg & Co. called at the bank a few days later to pay the draft, sign the notes, and obtain the bill of lading, but was informed that the documents had been returned to the Harwood-Barley Manufacturing Company.

On the 5th of May, 1915, the Harwood-Barley Manufacturing Company returned the sight draft and notes and bill of lading to the Canal Bank & Trust Company, with instructions to place the matter in the hands of an attorney for attention; and on the same day wrote to J. E. Hirschberg & Co., advising them that the papers had been returned to the bank. Two days thereafter the bank delivered the documents and the correspondence from the Harwood-Barley Manufacturing Company to the attorneys who represent the plaintiff in this suit. When a member of the firm of J. E. Hirschberg & Co. called at the attorney's office, on or about the 8th of May, 1915, one of the attorneys said he had some doubt regarding the validity of a chattel mortgage, and would look into the matter. A few days later the member of the Hirschberg firm again called at the attorney's office and declared that, as the giving of a chattel mortgage was not one of the conditions of the contract, he had also placed the matter in the hands of an attorney.

Thereafter much correspondence and a number of interviews were had between the attorneys representing the Harwood-Barley Manufacturing Company and J. E. Hirschberg & Co., respectively. In the meantime J. E. Hirschberg & Co. had possession of the automobile and were using it as a jitney bus or sight-seeing car. It appears that, after an investigation of a new statute on the subject, the attorneys for the Harwood-Barley Manufacturing Company agreed to accept the chattel mortgage to secure the payment of the notes, but J. E. Hirschberg & Co., on the advice of their attorney, declined to give the mortgage, on the ground that it was not a condition of the contract.

On the 15th of May, 1915, the attorney for Harwood-Barley Manufacturing Company

made demand on the Illinois Central Railroad Company for the balance due on the automobile, $2,375. On that day J. E. Hirschberg & Co. wrote to the Harwood-Barley Manufacturing Company confirming a telegram which they had sent the day before, demanding the bill of lading and the carrying out of the contract. In the letter they suggested that they would pay the balance due for the automobile in cash if the Harwood-Barley Manufacturing Company would "make the inducement acceptable." The latter replied, stating what discount would be allowed, but it was not acceptable to J. E. Hirschberg & Co. On the 22d of May, 1915, J. E. Hirschberg & Co. offered to return the automobile to the Illinois Central Railroad Company, but the latter declined to receive it, on the ground that it had been used and was then a secondhand car. Thereafter J. E. Hirschberg & Co. stored the car, and took up the correspondence direct with the Harwood-Barley Manufacturing Company. In the meantime the attorney of J. E. Hirschberg & Co., in a letter to the attorney of the Harwood-Barley Manufacturing Company, suggested that he would advise his clients to sign a chattel mortgage and settle the controversy if the Harwood-Barley Manufacturing Company would make a deduction of $1,000; which proposition was declined. On the 27th of July, 1915, in response to a letter from J. E. Hirschberg & Co., and in an attempt to bring about a settlement of the controversy, Harwood-Barley Manufacturing Company wrote a lengthy letter, in which they used the expression:

"We will either eventually get our money or our truck, and for your own information we want to say that we have never had a case yet where we failed to get one or the other."

And they said further:

"We want our money or we want our truck, or some satisfactory security whereby we are assured that we will get our money."

Referring to that letter, a few days later, the attorney of J. E. Hirschberg & Co. wrote to the attorneys of the Harwood-Barley Manufacturing Company that he thought the letter pointed out a method by which the affair could be adjusted without further trouble; and he proposed that, if the Harwood-Barley Manufacturing Company would return $1,000 which J. E. Hirschberg & Co. claimed to have paid ($400 of which they alleged was paid on the four other trucks), the latter would return the automobile, which, he said, had only been used three or four days. That proposition was declined, and the subsequent negotiations failed to bring about an amicable settlement.

The Harwood-Barley Manufacturing Company instituted this suit against the Illinois Central Railroad Company on the bill of lading to recover the balance due on the purchase price of the automobile, $2,375, with legal interest from the 15th of May, 1915, the day on which demand was made for the delivery of the car.

In answer to the suit the defendant admitted that the automobile had been delivered to J. E. Hirschberg & Co. without the surrender of the bill of lading, but denied liability to the plaintiff on the following grounds: That, when J. E. Hirschberg & Co., who had bought the automobile, called at the Canal Bank to pay the $275 and sign the ten notes of $210 each representing the balance due on the purchase price, and to obtain the bill of lading, the bank declined to accept the money and notes or to deliver the bill of lading, stating that the contract contemplated the giving of a chattel mortgage, for which the laws of Louisiana did not provide; that thereafter J. E. Hirschberg & Co., denying that the contract contemplated a chattel mortgage, offered to return the automobile to the plaintiff, which the latter declined to accept. The defendant prayed that J. E. Hirschberg & Co., as principal, and Max Schwabacher, as surety, on the indemnity bond, be called in warranty, and that, if

judgment should be rendered in favor of plaintiff, it should also be rendered in favor of defendant against the principal and surety on the indemnity bond in solido for the same amount. The district judge ordered that the principal and surety on the indemnity bond be called in warranty.

In answer to the call in warranty and to the demand of the plaintiff, J. E. Hirschberg & Co. admitted the contract for the purchase of the five automobiles on the terms stated above, and they annexed a copy of the contract to their answer. They admitted the signing and delivery of the indemnity bond to the railroad company and the receipt of the automobile without the surrender of the bill of lading. They alleged that they had been unable to obtain the bill of lading without giving a chattel mortgage on the automobile, that they had first declined to give the chattel mortgage, because the contract did not require it, but that they had subsequently consented to give the chattel mortgage, and the attorney for Harwood-Barley Manufacturing Company had declined to accept it, saying it would not be valid under the laws of Louisiana. Referring to the letter written by the Harwood-Barley Manufacturing Company on the 29th of July, 1915, the defendants alleged that they were thereby given the option either to return the automobile or to pay for it or to give satisfactory security for the payment, and that they, in turn, offered and agreed to return the truck. They alleged that in the meantime they had tendered the automobile to the railroad company, and on the latter's refusal to receive it had stored it, and had advised the plaintiff that they would hold the latter liable for all damages and expenses incurred. They alleged that they had paid $1,000 on the contract, which, they alleged, the plaintiff had violated, and that, if judgment should be rendered against them directing them to return the truck to the railroad company or to the plaintiff, such judgment should be made contingent upon the return to them of the $1,000 paid to the plaintiff. They prayed for judgment annulling the indemnity bond and directing the plaintiff to take back the truck and to pay to the defendant $1,000 and for reservation of their right to sue the plaintiff for damages.

In his answer to the call in warranty and to the plaintiff's demand, Max Schwabacher made substantially the same allegations and defenses urged by J. E. Hirschberg & Co., and prayed for judgment annulling the indemnity bond which he had signed as surety.

When the case was called for trial, before any evidence was offered, the plaintiff's counsel moved to strike from the answer of the railroad company the call in warranty, and to strike out the answers of the so-called warrantors, and he objected to the introduction of any evidence in support of the defenses made in the answers of the so-called warrantors, on the ground that the calls in warranty and the defenses urged by the respondents were not provided for nor permitted under the law of this state. The district judge ruled that the objection went to the effect of such evidence as might be offered, and it was agreed that the objection should apply to any evidence that might be offered on the issues raised by the calls in warranty.

Judgment was rendered in favor of the plaintiff and against the defendant railroad company, as prayed for in the plaintiff's petition, and judgment for the same amount was rendered in favor of the railroad company and against the principal and surety on the indemnity bond in solido. The defendant railroad company and the principal and surety on the indemnity bond have appealed, and in answer to the appeal the plaintiff prays for 10 per cent. damages for a frivolous appeal.

### Opinion.

[1] In support of their motion to strike out the call in warranty and the answers of the warrantors, and in support of the objection to the introduction of evidence on the issues raised by the answers of the warrantors, counsel for the plaintiff cite the decision rendered by this court in the case of Bain v. Arthur et al., 129 La. 143, 55 South. 743, to the effect that one who is sued on an obligation has no right to call in warranty a third party who has signed an indemnity contract. In contradiction of that doctrine counsel for the defendant and warrantors cite the decision in Muntz v. Algiers & Gretna Railway Co., 114 La. 437, 38 South. 410, where it was said that the right of a defendant to call a third party in warranty did not depend upon any privity between the warrantor and the plaintiff in the main action, but upon the existence of a contract of warranty between the defendant and the party called in warranty. We find it unnecessary to distinguish or reconcile the decisions cited, because neither of them is applicable to the case before us. In each of the cases cited the party called in warranty filed an exception of no cause of action, which in one case was overruled, and in the other was sustained. In the case before us the parties called in warranty did not except or object to being called upon to defend the suit, or to stand in judgment as the warrantors of the defendant in the main action. The plaintiff in this suit is not concerned with the issues between the defendant railroad company and its warrantors so long as those issues do not prevail as a defense to the original suit on the bill of lading.

Counsel for the defendant railroad company admit in their brief that the presence of the warrantors in this case cannot affect the plaintiff's rights against the defendant in any way. Notwithstanding that admission, the learned counsel for the railroad company attempt to use the defense made by the warrantors as a defense to the main action on the bill of lading. They contend that J. E. Hirschberg & Co. was the owner of the automobile, and that the railroad company was justified in delivering the vehicle to its true owner without the production of the bill of lading, although such delivery was contrary to the terms of the instrument. The warrantors join in that contention, and urge that they had a right to inject into this suit, as a defense to the original action against the railroad company on the bill of lading, whatever defenses they might have had if the plaintiff had sued J. E. Hirschberg & Co. for the price of the automobile. The defenses which the warrantors have thus injected into the original suit against the railroad company on the bill of lading are: (1) That the plaintiff's demanding a chattel mortgage was a breach of the contract for the sale of the automobile; and (2) that the plaintiff, in its letter of July 27, 1915, offered to take back the car, and the proposal of the attorney of J. E. Hirschberg & Co. in his letter of July 29, 1915, to return the car on the repayment of the $1,000 that J. E. Hirschberg & Co. claimed they had paid was an acceptance of the plaintiff's offer.

Our opinion is that the warrantors, J. E. Hirschberg & Co., could not, by taking possession of the automobile, on furnishing an indemnity bond instead of procuring and surrendering the bill of lading to the railroad company, deprive the Harwood-Barley Manufacturing Company of its right of action against the railroad company on the bill of lading and compel the Harwood-Barley Manufacturing Company to look to Hirschberg & Co. for the payment of the price of the automobile. And our opinion is that the railroad company could not, by accepting from J. E. Hirschberg & Co. an indemnity bond in lieu of the bill of lading, relieve itself of its liability on the bill of lading, and compel the Harwood-Barley Manufacturing

Company to look to J. E. Hirschberg & Co. for payment of the price of the automobile. In delivering the automobile to J. E. Hirschberg & Co., without requiring the latter to surrender the bill of lading, the railroad company did not act upon a belief that J. E. Hirschberg & Co. was entitled to receive the automobile without producing the bill of lading, but upon the railroad company's faith in the security afforded by the indemnity bond. In fact, the railroad company admitted in its correspondence with the plaintiff's attorney that the railroad company was not concerned with the controversy between the Harwood-Barley Manufacturing Company and J. E. Hirschberg & Co. regarding the payment of the price of the automobile, because the railroad company was amply secured by the indemnity bond. Hence the railroad company has no interest in urging, nor right to urge, the contentions of J. E. Hirschberg & Co. as a defense to this action on the bill of lading.

The instrument sued on contains the following clauses, viz.:

"The surrender of this original order bill of lading, properly indorsed, shall be required before the delivery of the property. Inspection of property covered by this bill of lading, will not be permitted unless provided by law or unless permission is indorsed on this original bill of lading or given in writing by the shipper."

"The amount of any loss or damage for which any carrier is liable shall be computed on the basis of the value of the property (being the bona fide invoice price, if any, to the consignee, including the freight charges, if prepaid) at the place and time of shipment under this bill of lading, unless a lower value has been represented in writing by the shipper or has been agreed upon or is determined by the classification or tariffs upon which the rate is based, in any of which events such lower value shall be the maximum amount to govern such computation, whether or not such loss or damage occurs from negligence."

[2] In support of the contention that the delivery of the automobile to J. E. Hirschberg & Co. and the latter's complaint of a breach of the original contract of sale are proper and sufficient defenses to relieve the railroad company of liability in this action on the bill of lading, the defendant and warrantors cite the decision in Hentz v. The Idaho, 93 U. S. 575, 23 L. Ed. 978.

In the case cited it was held that a common carrier might show, as an excuse for nondelivery of freight pursuant to a bill of lading, that the carrier delivered the goods on demand to the true owner without the bill of lading. It was said that a common carrier, as the bailee, of goods received for shipment from one who was not the true owner, could not acquire any greater right to withhold the property from its lawful owner than if the bailee had purchased the goods from one who was not the owner. Hence it was held that, if the bailee delivered the property to the true owner, having the right to the possession of it, on the latter's demand, such delivery was a sufficient defense to a suit by the bailor against the bailee for the return of the property. In that case, however, the court was dealing with a lot of cotton that had been delivered to the defendant steamship on a bill of lading that was assigned to the party to whom the steamship company afterwards delivered the cotton, and who was the true and lawful owner of it. The cotton had been confused with other cotton in the cargo, and there was a fraudulent attempt to divert it to respond to another bill of lading held by the plaintiff, Hentz. The principle on which the decision was rendered against the plaintiff, Hentz—that is, that a bailee cannot acquire from one who is not the owner of the property a greater right to withhold it from its true owner than if the bailee had bought it from the one who was not the owner—has no application to the case before us. The defendant in this case does not pretend that the plaintiff was not the owner of the automobile delivered to the railroad company. Nor is it pretended that J. E. Hirschberg & Co. was entitled to take possession of the automobile without the production and sur-

render of the bill of lading. If the railroad company had not surrendered the automobile to J. E. Hirschberg & Co. without the bill of lading, the latter would have paid for it or given satisfactory security for the payment of the balance due on the purchase price, or it would have been returned to the plaintiff in the condition in which it was received by the railroad company, and no loss would have resulted to any one.

The learned counsel for the defendant and warrantors also refer us to the case of The Asiatic Prince decided by the United States Circuit Court of Appeals, reported in 108 Fed. 287, 47 C. C. A. 325. In that case the plaintiff or libelant shipped to Delmarco & Co., at Santos, Brazil, a consignment of goods to be paid for on delivery. The goods were consigned to the order of the shipper, who attached the bill of lading to a sight draft on Delmarco & Co., and forwarded the same to a bank in Santos. Having given Delmarco & Co. credit for a balance due them by the shipper, the sight draft was made for only the balance due on the purchase price of the goods shipped. Delmarco & Co. consented to the credit being applied in part payment of the price of the goods, but, before the goods arrived, made further remittances to the consignor, in ignorance of the draft. When the draft was presented by the bank, Delmarco & Co. first objected to paying it, because of the remittances they had made after the draft was drawn, but later deposited the amount of the draft at the bank and demanded the surrender of the bill of lading. During a discussion between the manager of the bank and a representative of the firm of Delmarco & Co. as to the rate of exchange on the draft, the bank received a cable from the shipper stating that a draft for a larger amount had been drawn and instructing the bank not to surrender the bill of lading on the payment of the first draft. It appears that a few days after the Asiatic Prince had sailed with the consignment of goods, the shipper changed his mind about applying the credit due to Delmarco & Co. on the price of the goods, and applied it to another indebtedness of Delmarco & Co. The bank refused to surrender the bill of lading to Delmarco & Co. without payment of the second and larger draft that had been received by the bank. Delmarco & Co. instituted judicial proceedings in Santos, and, on an order of the local district court, deposited in the bank, for the account of the shipper, the amount of the first draft. It appears that, according to the law and usage of Brazil, the steamship company was compelled to deliver all dutiable goods, like those involved in the case, to the customs authorities, and that the allowance of entry and responsibility for a delivery of the goods to the person entitled thereto, on payment of the duties, thereafter devolved entirely upon the customs authorities. Accordingly the steamship company had delivered the goods to the customs authorities during the controversy between the bank and Delmarco & Co. The customs authorities delivered the goods to Delmarco & Co., on proof of the deposit made in bank pursuant to the orders of court, and on the furnishing of an indemnity bond by Delmarco & Co., without the production of the bills of lading. The steamship company, as defendant in the libel suit instituted by the shipper on the bill of lading, was permitted to show that the remittances made by Delmarco & Co. to the shipper and applied on the purchase price of the consignment, together with the amount first credited thereon by the libelant, reduced the amount due for the purchase price below the amount deposited in bank by Delmarco & Co. to the credit of the shipper, under the orders of the court in Santos, and that the goods were therefore delivered to the true owner.

In our opinion, the decision last cited has no application whatever to the case before

us. It would be applicable here if the railroad company were attempting to show that J. E. Hirschberg & Co. had paid to the plaintiff all that was due on the price of the automobile, and that the purchaser to whom it was delivered was entitled to it without the bill of lading. In other words, the doctrine of the case cited is that the common carrier may successfully defend a suit by the shipper on the bill of lading by showing that the shipper has been paid by the purchaser, to whom the goods were delivered, the entire purchase price that was due to the shipper, and that he is not entitled to recover anything either from the carrier or from the purchaser to whom the goods were delivered.

There is no authority in law or reason for the doctrine advanced by the learned counsel for the defendant and warrantors that a common carrier who receives goods consigned to the order of the shipper, with instructions to notify a certain party at the destination, may deliver the goods to the party so notified, on an indemnity bond from the latter to protect the carrier, and compel the shipper to look to the party to whom the goods were delivered, as the purchaser, for the payment of the price or value of the goods. Such a doctrine would destroy the security afforded in the sale of goods, "B/L attached to sight draft," and shipments "to shipper's order, notify ———." And it would destroy a very general and important commercial custom.

Our conclusion is that the judgment appealed from is correct, except that, as the issues raised by the warrantors against the plaintiff were not decided or considered as a proper issue in this case, whatever claims the warrantors have against the plaintiff should be reserved to them. For that reason, if for no other, the appeal cannot be regarded as frivolous. Whatever right of action the warrantors may have against the plaintiff would, perhaps, not be affected by the judgment rendered in this case without an express reservation in favor of the warrantors; hence our amendment of the judgment in that respect does not justify putting the costs of appeal on the plaintiff.

The judgment appealed from is therefore amended by reserving to the warrantors whatever right of action they may have against the plaintiff, and, as thus amended, the judgment is affirmed. The defendant and warrantors are condemned in solido to pay the costs of both courts, the defendant having recourse against the warrantors in solido for reimbursement of whatever costs of court the defendant shall have paid, and the warrantor, Max Schwabacher, having recourse against J. E. Hirschberg & Co. for reimbursement of whatever costs of court he shall have paid.