OYERTON, J.
 

 This is a concursus proceeding, provoked by plaintiff. Six furnishers of material for the construction of a church building, whose claims were recorded, are made parties to the proceeding, as well as the contractors, the surety on the contractors’ bond, and the surety’s indemnitor, R. R. Lambert. Plaintiff prays for judgment, ordering • the cancellation of the claims recorded, and for distribution of a balance of $451.75 of the contract price, deposited by it in court.
 

 • The furnishers of material, including the surety’s indemnitor as such a furnisher, appeared and asserted their claims. The surety and its indemnitor also appeared and urged various defenses to the demands against them. Thez'e was judgment in favor of the fuz'nishers of material for the amounts of their claims against the surety and the contracting firm, save as to the surety’s indemnitor, who, though urging a large claim as furnisher of material, was awarded judgment against the contracting firm, alone for the amount thereof, and there was also judgment in favor of the surety against its indemnitor, who was called by it in warranty, for the full amount of the judgment for which the surety was cast, and judgnrezrt in favor of plaintiff, ordering the cancellation of the claims, recorded as liens against the building. The surety and its indemnitor alone have appealed from the judgment rendered.
 

 It appears that plaintiff entered into a contract with the firm of Barnette & Madjarosh, under date of July 3, 1923, for the erection of a church at Minden, La., for the sum of $25,359. Barnette & Madjarosh furnished the United States Fidelity & Guaranty Company as surety on their bond, which was for the sum of $25,059. R. Ri. Lambert entered into a contract with the surety to indemnify it for any loss it might sustain by reason of its signing the bond. ’The contract and the bond were recorded in the mortgage records on July 26, 1923. The contractors began the construction of the building, and the work was well under way, though overdue, in the latter part of January, 1924. It is urged by plaintiff that, about that time, the contractor's defaulted on their contract, making it necessary for plaintiff to complete the work under the supervision of the architects, which it proceeded to do, it is claimed, to the knowledge and with the acquiescence of the surety. The building was completed by plaintiff, out of the balance remaining of the contract price, about October 1, 1924. A day or two later plaintiff filed the present proceeding.
 

 Both the surety and its indemnitor filed exceptions of prematurity, and later reiterated them in the form of exceptions of no cause of action. These exceptions were ovewuled. The exceptions of prematurity are based, as also, in part, the exceptions of no cause of action, on the theory that no certificate of the contractors’ default or of the completion
 
 *717
 
 or acceptance of the building, was recorded in the mortgage records 30 days prior to the filing of these proceedings, and that-there is no allegation showing that any one of these certificates was so recorded.
 

 The work was done, and this concursus was provoked under Act 139 of 1922. Section 2 thereof gives those having claims against the contractor 30 days after the registry of notice by the owner in the moi’tgage records of the acceptance of the work, or of the contractors’ default, or the architect’s certificate of completion, within which to file their claims. This section also gives to the owner, or any other person at interest, the right, if he so elects, to provoke a concursus if, at the expiration of the 30-day period, there are claims of record. Therefore, strictly speaking, one of these notices should have been recorded 30 days prior to the filing of the petition for a concursus. However, to sustain these exceptions we think would be doing a vain thing. We are satisfied that all of the creditors are before the court. All of the. debts contracted after the owner took charge, in the latter part of January, or in the early part of February, 1924, were paid soon after they were contracted, leaving un.paid only some of the debts due by the contractors. This proceeding was not filed until October 3, 1924, and was not called for trial until June 16, 1925. It) is reasonable, therefore, to conclude that, in the interval which intervened between the taking charge of the work by the owner and the filing of these proceedings, or the calling of the case for trial, all creditors protected their rights by recording their claims and asserting them herein. There is not the slightest suggestion in either brief or argument, or otherwise, that any one of them has failed to do so, though sufficient time has elapsed, even between the completion of the building and the present, for prescription to have accrued on any claim, if such there be, not urged in these proceedings. We therefore find no reason to disturb the rulings of the lower court on the exceptions now before us.
 

 Another question presented is one arising under an exception of no cause of action. That question is ,as follows: The contractors’ bond, which was made a part of the petition, shows that it is dated July 19, 1923, and was given in favor of the First Presbyterian Church, Minden, La., to secure the faithful performance of 9. contract, dated July 19, 1923, to erect a church building for that church, whereas the contract, which is also made a part of the petition, shows that it was entered into, not by the First Presbyterian Church, but by the Minden Presbyterian Church,, and is not dated July 19, 1923, but July 3, 1923. By reason of these discrepancies, it is argued by counsel for the indemnitor that it 'does not appear that the bond sued on is connected with the contract under which the work, involved herein, was done, and therefore that the surety cannot be held liable on the bond, and consequently that the 'indemnitor cannot be held liable to the surety, as relates to that bond, on his contract of indemnity. We think, however, that the petition shows that the bond sued on is the bond given under the contract attached to the petition for the performance of this particular work. It is there distinctly alleged that the bond attached to the petition is the bond given “for the faithful performance of said contract” ; that is, of the contract attached to the petition, and dated July 3, 1923. Therefore the exception of no cause of action, so far as based on these discrepancies, was properly overruled.
 

 Under the exception of no cause of action, it is also urged, that the bond is not conditioned, as provided by section 2 of Act 139 of 1922, on “the true and faithful performance of the contraict and the payment of all subcontractors, journeymen, cartmen, truck-men, workmen, laborers, mechanics, and fur
 
 *719
 
 nishers of material jointly as. their interest, may arise,” but is merely conditioned “that we will well arid truly fulfill any and. all the conditions and specifications as specified in the said contract to build said church as shown by contract signed July 19, 1923.” Because the bond so rea"ds, it is urged that the surety is not liable for such claims as those of furnishers of material, laborers, and the like, and therefore that the indemnitor is not liable to the surety for them.
 

 It was the evident intention of the owner to exact of the contractor the bond required by statute, and it was the evident intention of the contractors and the surety to give such a bond. The bond being a statutory one, and such being the intention of the parties, whatever is in the bond that is not required by law should be road out of it, and whatever is not expressed in the bond, and should have been included in it, should be read into it. Davis v. West Louisiana Bank, 155 La. 245, 99 So. 207; Id., 155 La. 252, 99 So. 210. Applying the foregoing principle here, there can be no question as to the sufficiency of the bond. Moreover, not applying that principle, it is difficult to see how, under a bond conditioned on the contractor’s well and truly fulfilling any' and all conditions of the contract, the obligation being imposed upon him to deliver the building free from liens, the surety on the bond is not bound to see that the building is so delivered. Therefore we think that this phhse of the exceptions of no cause of action was properly overruled.
 

 On the merits, it is urged, among other things, that, when plaintiff took charge of the construction of the building for the purpose of completing it, the act was in violation of the contract and such as to discharge the surety. However, we fail to find that the surety was discharged by that act. At the time the owner took charge the contractors were unable to complete the work. In fact, one of' them, Madjarosh, had left, leaving Barnette in charge. Lambert, the surety’s indemnitor, who had been furnishing material and money to the contractors, and who had furnished them in an amount exceeding $9,-000, declined to assist them any further, and shortly thereafter recorded his claim against the property. Barnette, the contractor, who remained on the work, said at this time that lie was unable to_ complete the building without financial assistance. Apparently, he was unable to get such assistance. The building, at that time, was nearly a month overdue. Barnette, realizing the situation, consented, according to the weight of the evidence, that the owner take charge of the work. About this time, at the request of Lambert, the surety’s indemnitor, Miller who was both the local agent for the surety and a member of the church’s building committee, sent a telegram to the New Orleans office of the surety to send some one to look over the situation, and advising the surety substantially that Lambert was dissatisfied.
 

 In- response to the foregoing telegram, the New Orleans office sent a Mr. Ryan, who reached Minden two days later, to investigate the situation. Ryan saw Miller, who advised him of conditions, and told him that there still remained sufficient of the contract price for the completion of the building, and also of the agreement made with Barnette as to its completion. Miller testified, and his evidence seems to be uncontradicted, that Ryan, after being advised that the church had sufficient of the contract price on hand to complete .the work, and of the agreement entered into with Barnette, told Miller that there was nothing else for the church to do but to go on and complete the building. Ryan appears, from an excerpt, quoted in one of the letters found in the record, written by the superintendent of the surety’s Gulf Claim Department to the home office, to have made some kind of a report concerning arrangements made for the completion of the build
 
 *721
 
 ing. The report is not before us. However, without going into further details, we may say that we feel satisfied that the surety, as a result of Ryan’s visit, had full knowledge of the arrangements made with Barnette, looking to the completion of the church, and of the consent given by its agent Ryan to those arangements, and acquiesced therein. So far as concerns the surety’s indemnitor, he also, we think, had knowledge of the arrangements made, and acquiesced therein.
 

 After the foregoing arrangements had been made, and after Ryan had told the church, through Miller, to proceed with the work, the church placed Barnette in a subordinate position, and acting, pursuant to the agreement, under the directions of the architects, completed the building out of the balance of the contract price on hand.
 

 In our view, neither the. surety nor its indemnitor has cause to complain of the foregoing act, for both, with full knowledge thereof, acquiesced therein.
 

 Another complaint made by the surety and its indemnitor relates to the allowance of extras. It is urged that the extra work amounted to $1,030.15 instead of $329.68, the amount allowed by the architects and sanctioned by the owner. Our examination of the record fails to disclose that there is error in the amount allowed. Many of the extras claimed-by the surety and its indemnitor to be such are not extras, but work contemplated by the contract. Complaint is also made that some work, completed, was taken down and rebuilt without sufficient cause. The specifications authorize the taking out of defective work and replacing it with proper work. The work in this instance that was taken out and replaced was defective. In the rebuilding of the steps, which was a part of the work taken out, bricks were used instead of concrete, but a proper adjustment was made. Complaint is also made, in one or two instances, of excessive charges for work done after the owner took charge, but suffice it to say that the evidence does not establish this complaint.
 

 Another of the complaints urged by the surety is that Barnette, the senior member of the contracting firm, was required by A. E. Drake, the treasurer of the church, to pay him personally an amount due him for material purchased for use on the contract involved herein, and on other contracts. The exact amount so paid does not appear, but is somewhere between $600 and $800. The cause of the complaint arose when Barnette presented to Drake, as treasurer, an estimate for payment, showing work done on the building, approved by the architects. Drake, on that occasion, insisted that he be paid this indebtedness, and Barnette protested, urging that the material, purchased for use in fulfilling the church contract; was not payable out of that estimate, and that he needed the money to pay Lambert, but finally yielded, though reluctantly, by paying Dx-ake the indebtedness. The contention of the surety and its indemnitor is that the amount so paid should be ordered deposited in court for the benefit of the creditors. Assuming, without so deciding, that Drake had no right to receive this money, nevertheless we cannot order him to deposit it in court, for the simple reason that he is not a party to this suit. Nor would we be justified in ordqx-ing the church to deposit the amount paid Drake in court. The church paid to Barnette for his firm- a debt due by it to the firm. The payment by the church was not invalid, because the church’s treasurer, in making it, availed himself of the opportunity to collect a debt due him personally. The act of making the payment was the act of the church. The act of collecting the debt was a personal act of the treasurer, for which the church was not responsible.
 

 Another complaint of the surety and its indemnitor is that the owner did not retain the percentage, required of it by the eon-
 
 *723
 
 tracts, in making payments as the work progressed. That instrument provides for monthly payments of S5 per cent, of the value, proportionate to the amount of the contract, of labor and material incorporated in the building, during each month, and on the substantial completion of the building, for the payment of an additional 5 per cent., and the remainder 30 days later, provided the contract be then fully performed. The contention is that the percentage that should have been retained by the owner, under the contract, should be ordered deposited in court.
 

 Section 7 of Act 139 of 1922 is to the effect that a building contract may provide for partial payments, and that payments made by the owner strictly in accordance with the contract shall absolve him from furthur liability therefor, provided that he has exacted a bond of the contractor, and has recorded the bond and building contract in the mortgage records. Section 5 of the act gives the surety the right to complain when the owner violates the contract in the respect here urged, for it is provided in that section, in restricting the defenses of the surety, that, “in all cases where surety has been furnished, the surety shall be entitled
 
 to
 
 make only the same defenses that the contractor for whom he signed the bond is authorized to make except as to the owner who has made payments in anticipation.”
 

 So far as relates to payments made up to the time the owner took charge of the work, all of which were made to the contractors, the record does, not disclose whether the required percentage was retained, nor does it disclose sufficient to enable us to ascertain whether there was a departure from the contract with reference to such retentions. Therefore the complainants have not established their contention in this respect.
 

 As to payments made by the owner after it took charge of the work, the record discloses that the percentages were not retained. There was then no contractor in charge of the work to whom to make payments. The method of procedure pursued was for the owner, acting under the directions of the architects, to purchase material and employ labor to complete the building, and to pay directly for the mateiial and the labor. There was no other reasonable way of proceeding. It is obvious that the provisions of the contract and of the statute, relative to payments have no application here. They relate to payments made to the contractors. Where the payments are so made, there is a' possibility that the contractor may leave unpaid some of the debts for labor and material, using a part of the 'money for other purposes. Therefore building contracts frequently provide for the retaining of a percentage by the owner, and the law holds the owner responsible, where he fails to do so, by not discharging him by reason of the payment, to the extent of the percentage, not retained. Where the owner, however, undertakes the completion of the work, a different situation is presented.. A payment made by him out of the contract price for material or work, not used or done on the building, or for anything else, not connected with the building, is simply no payment on the contract at all, and the owner is still responsible upon it to that extent.
 

 Another complaint is one by Lambert, who is the surety’s indemnitor, and who insists that the trial judge should have allowed against the church the principal claimed by him as furnisher of material. Lambert has established the amount of his claim for $9,-035.96. I-Ie is entitled to the judgment for that amount, awarded him by the lower court against the contractors, but, as ruled by that court, he is not entitled to the lien urged by him, as furnisher of material, against the church. Were that lien allowed, .assuming that it is all valid, it would make it incumbent on the surety to remove the lien by pay
 
 *725
 
 ing it, and then'incumbent on Lambert, as tbe surety’s indemnitor, to.comply witb bis contract by paying tbe surety tbe amount disbursed by it to remove tbe lien.
 

 The last complaint, witb tbe exception of alleged preferences given to some .of tbe furnishers of material, in which there is no merit, is that tbe surety should have been allowed judgment against its indemnitor for attorney’s fees for defending this proceeding and suing tbe indemnitor. The surety is not entitled to such judgment in this instance. We know of no statute authorizing tbe awarding of attorney’s fees in such an instance as this. Tbe contract of indemnity was apparently lost before tbe trial, and therefore is not before us. Tbe substance of it was not proved. An attempt was made to show by Lambert that it contained a clause relative to attorney’s fees, but be distinctly answered that he did not remember whether it did or not.
 

 For tbe foregoing reasons, tbe judgment appealed from is affirmed.
 

 O’NIELL, O. J., absent during tbe argument.