HAMITER, Justice.
In this attachment proceeding, instituted in the First Judicial District Court of Cad-do Parish, The First State Bank of Marlin, Texas, is seeking recovery of $4388.92 allegedly due it by the defendant, Glenn K. Burton, a resident of the State of Illinois.
On December 1, 1950, the allegations of the petition recite, the defendant Burton deposited to his account with the plaintiff bank, and he received credit for, two *1033 checks dated November 24, 1950 which were drawn by The Hunter Company, Inc. on the Commercial National Bank in Shreveport. One, in the sum of $414, was payable to Glenn K. Burton and Acorn Rig & Construction Company; and the second, for $3974.92, was in favor of Glenn K. Burton and Morris & Kendrick. Each check was endorsed by Glenn K. Burton individually and also by him for the other named payee. The defendant withdrew funds from his account; and on January 23, 1951, while a balance of only $30.42 remained therein, the described two checks were returned unpaid to plaintiff, the bank on which they were drawn having refused to honor them for the reason that defendant had no authority to endorse for his co-payees.
Plaintiff further alleged, on information and belief, that The Hunter Company, Inc., a Delaware corporation doing business in Louisiana, is indebted to the defendant Burton and should be made garnishee.
As prayed for by plaintiff the writ of attachment issued and interrogatories were served on The Hunter Company, Inc., as garnishee.
Answering the interrogatories the garnishee categorically denied that it was indebted unto the defendant. Then it pleaded that the two checks described in plaintiff’s petition were issued pursuant to a contract with Burton, under the provisions of which it was obliged to pay one-half the cost of certain items in connection with the drilling of a well in Ouachita County, Arkansas; and, further, that the question of its indebtedness under the contract cannot be decided until the rights of Acorn Rig & Construction Company and Morris & Kendrick, the joint payees named in the checks along with Burton, have likewise been determined in a separate action.
The garnishee prayed that it be discharged or, in the alternative, that Acorn Rig & Construction Company and Morris & Kendrick be made parties to these proceedings in order that they may. assert whatever rights they have to the funds represented by the checks.
Plaintiff moved to traverse the answers to the interrogatories, and the garnishee was ordered to show cause why they should not be set aside.
A trial of the rule to traverse followed; and, at its conclusion, the court decreed that the rule be discharged and the garnishee relieved from further answering. From the judgment plaintiff is appealing.
The record discloses that in October, 1950 the defendant Burton owned certain oil, gas and mineral leases affecting 560 .acres of land in Ouachita County, Arkansas, and The Hunter Company, Inc. held a similar lease on an adjoining 80-acre tract. Being desirous of obtaining a test well in that area they agreed in writing that a firm known as Morris & Kendrick Drilling Company, with which Burton had already entered into a contract *1035 for the well, should commence and perform the drilling operations. Particularly, the instrument stated:
"* * * Hunter agrees to pay one-half of the amount which Burton is obligated to pay under the terms of said contract, limited; however, to the amounts herein stipulated. * * *
"It is understood that Burton and Hunter, in addition to paying the contractor equally, as above provided, will also pay in equal proportions, for the cost of digging the pits, erecting derrick, for all casing, mud and other equipmént which may be necessary in order to complete' said well into the tanks, if the well results in one capable of producing oil, gas or other minerals in paying quantities.
* * * * * *
“It is understood that no partnership or association is contemplated by this agreement, and it shall never be construed to be such, as this is merely an agreement to cause the drilling of a test well, the expense of which is to be borne equally by Hunter and Burton, subject to the terms and provisions set forth above.” Further, the agreement made provision for assignments of certain leasehold interests as between the parties thereto.
The Hunter Company, Inc., had no direct contractural relations with the furnishers of material and labor for the well, and it has never been notified of any assignments of amounts due by it under the agreement with Burton. ■
After the drilling was completed The Hunter Company, Inc.-, in keeping with its promise to pay one-half of the well’s cost, issued the two joint checks described in plaintiff’s petition, one of which was payable to Burton and Acorn Rig & Construction Company and the other to Burton and Morris & Kendrick. However, the checks were not honored (as before shown), the drawer having stopped payment thereon when it discovered that they were not endorsed as drawn.
The Hunter Company, Inc. admits, as it must, that its obligation under the contract has not been discharged; and it now takes the position that it may be indebted to Burton’s creditors although it does not know with certainty to whom the funds represented by the checks, are due and owing. , • ••
Burton, undeniably, would be due the funds as reimbursement if he has settled with the labor and material furnishers. On the other hand those creditors, if not so paid, might well contend (though not necessarily successfully) that they have a right of action against The Hunter Company, Inc. to compel payment by it to them, the agreement stipulation that the expenses of the test well -was “to be borne equally by Blunter and Burton” having been made for their benefit and also they being entitled' to lien rights against the leases and well. But these are matters that cannot now be passed upon. The record contains no evidence as to whether payment *1037 was made by ■ Burton. Furthermore, his mentioned creditors are riot parties to this proceeding — a prerequisite to the adjudication of whatever rights and remedies they may have against the garnishee.
Our courts strive to protect garnishees against double liability as a consequence of garnishment proceedings, 5 American Jurisprudence, verbo Attachment and Garnishment, Section 781, Isaac v. Comisión Reguladora Del Mercado De Henequén, 204 La. 1, 14 So.2d 865, and, in this connection, have sanctioned at least two courses available to them. Thus, the garnishee herein, on being served with notice of the garnishment, might have convoked a concursus, depositing the money in- the registry of the court and citing all interested parties, just as was done in Willey v. St. Charles. Hotel Company, 52 La. Ann. 1581, 28 So. 182. Or it could resist the garnishment, as it is doing, on the theory that there are parties other than the defendant entitled to the funds, in which case the plaintiff is required to bring them into the proceeding for the purpose of having their rights determined.
While recognizing that plaintiff must obtain an adjudication of the rights of such third parties,.counsel for The Hunter Company, Inc. suggest that it is to be done in a separate action, not in. the garnishment proceeding, and they cite Ivens v. Ivens & Company, 30 La.Ann. 249. The decision is not apposite for the reason that in that case the ownership of the property sought to be seized was asserted by the garnishee himself, and the court correctly held that his title could not be tried! in a garnishment proceeding. . '
The garnishee here makes no claim to the ownership of the. funds in question. On the contrary it admits that they are owed to others, the proper disposition to be made of which is to be determined. The situation is quite similar to that in Edward Thompson Company v. Durand, 124 La. 381, 50 So. 407, 408, and Airey & Stouse v. Hoke, C. P. Ellis & Company, Garnishees, 164 La. 998, 115 So. 60, in each of which the court approved the doctrine that “ * * * where the evidence upon the disclosure of a garnishee shows that the debt sought to be garnished was payable to a third person, and not to defendant in a principal action, the disclosure' itself is sufficient to protect the garnishee, and it devolves upon plaintiff to bring in such party, if he desires to test the validity of the claim. * * * ”
True, in the last mentioned cases the court dismissed the garnishments, the effect of which was that the plaintiffs were required to institute new proceedings in order to bring in the additional interested parties. But the same end can be attained without any injury to the garnishee, it seems to us, by a remand of the case — a method consonant with the modern trend of liberality in upholding substantive rights, which tends to avoid a multiplicity of suits, and which is in keeping with the alternative demand of this garnishee.
*1039 Accordingly, this cause will be remanded for further proceedings on the rule to traverse the garnishee’s answers to the interrogatories, leave being granted to plaintiff to cite within a reasonable time all parties who might be interested in the funds in question. At the conclusion of the hearing the district court shall render such judgment on the rule as the evidence and the law require.
For the reasons assigned the judgment appealed from is reversed and set aside and the cause is remanded to the district court for further proceedings according to law and consistent with the views above expressed. Costs of this appeal shall be paid by plaintiff and garnishee in equal proportions.
HAWTHORNE, J., absent.