73 So.2d 453

**FIRST STATE BANK   v.   BURTON et al.**

**No. 41472.**

May 31, 1954.

Morgan, Baker & Skeels, Shreveport, for plaintiff-appellant.

Horace M. Bickham, Jr., Vivian, for claimants-appellees.

LE BLANC, Justice.

As is made to appear in the opinion of this Court in a previous hearing of this case, 222 La. 1030, 64 So.2d 421, this appeal arises out of a judgment rendered in the district court after the cause had been remanded to that Court for the purpose of having further proceedings conducted with parties who might have an interest in the subject matter of the suit and who had not been cited.

As indicated in the said opinion, the proceeding originated in an attachment in which The Hunter Company, Inc., had been made garnishee, the plaintiff bank claiming that that company had in its possession funds belonging to the defendant, Glenn K. Burton. The Hunter Company, Inc. will hereafter be referred to as Hunter Company.

Burton and Hunter Company had entered into a contract on October 9, 1950, for the drilling of an oil well by Burton on a lease held by Hunter Company on lands situated in Ouachita County in the State of Arkansas. They both held leases on lands in that area. Prior to entering into this contract, Burton, had on September 28, 1950, contracted orally with Morris & Kendrick Drilling Company for drilling the well. In the contract of October 9, 1950 between Hunter Company and Burton it is recited among other matters that:

"Whereas, Burton has already orally entered into a contract for the drilling of said well with Morris & Kendrick Drilling Company, of Vivian, Louisiana, hereinafter called 'Contractor', which contract Burton has, or will reduce to writing.

"Now, therefore, in consideration of the premises and of the mutual convenants herein made and contained, Burton and Hunter have agreed as follows:

"1. Burton agrees to cause the said Morris & Kendrick Drilling Company to commence operations for the drilling of the above referred to test well at the location above described on or before October 15, 1950, and to continue such drilling operations with due diligence until a depth of 2700 feet below the surface of the ground has been reached, unless oil, gas or other

minerals be discovered in paying quantities prior to reaching said depth or unless igneous rock, salt or some other practically impenetrable substance be encountered at a lesser depth.

"2. It is understood that the contract between Burton and Contractor provides, in effect, that the Contractor will 'cut the hole' and take two free cores for the total sum of $3.00 per foot drilled; additional cores are to be paid for at the rate of $150.00 each and the Contractor shall be paid $125.00 per eight hour day for day work. Hunter agrees to pay one-half of the amount which Burton is obligated to pay under the terms of said Contract, limited, however, to the amounts herein stipulated. Day work to be subject to approval of Hunter. /s/ Glenn Burton

"3. It is understood that Burton and Hunter, in addition to paying the Contractor equally, as above provided, will also pay in equal proportions, for the cost of digging the pits, erecting derrick, for all casing, mud and other equipment which may be necessary in order to complete said well into the tanks, if the well results in one capable of producing oil, gas or other minerals in paying quantities.

\*     \*     \*     \*     \*     \*

"10. It is understood that no partnership or association is contemplated by this agreement, and it shall never be construed to be such, as this is merely an agreement to cause the drilling of a test well, the expense of which is to be borne equally by Hunter and Burton, subject to the terms and provisions set forth above."

The drilling of the test well resulted unsuccessfully and thereafter, according to the stipulation on which the present proceeding was submitted, a statement of the total cost amounting to $7,949.83 was delivered to Burton who then delivered it to Hunter Company. Hunter Company then drew its check in the sum of $3974.92, that being one-half of the total amount, making the same payable to Glenn K. Burton and Morris & Kendrick.

From the stipulation it is made to appear also that R. D. Wilson, doing business as Acorn Rig & Construction Company had also entered into an oral contract with Burton under the terms of which he had dismantled the derrick on the well site at an agreed price of $828. On the same day that Hunter Company issued its check payable to Burton and Morris & Kendrick, it also issued one in the sum of $414 payable to Glenn K. Burton and Acorn Rig & Construction Company.     ·     ·   ·     -

Both checks were drawn on the Commercial National Bank, Shreveport, La., and Burton, who had received them both, then endorsed them in his name and in the name of the other payees and deposited them to his own account in the plaintiff bank in Marlin, Texas. He then drew against that deposit and had depleted the account to a balance of $30.42 when on

January 23, 1951, the two checks were returned to the plaintiff bank, having been dishonored by the Commercial National Bank for the reason that Burton had no authority to endorse them for the co-payees.

When the true situation which was developed by the answers of Hunter Company, garnishee in the original suit, and a rule to traverse the answers had been discharged in the lower Court, from which ruling an appeal had been taken, this Court, being without information as to whether Burton had ever paid Morris & Kendrick and Acorn Rig & Construction Company, concluded that these two creditors, if they had not been paid, should be made parties to the proceeding and ordered the case to be remanded. On the remand, in conformity with the suggestion contained in the Court's opinion that the matter might be brought to issue by the provoking of a concursus proceeding, the plaintiff bank did institute such a proceeding by having both Morris & Kendrick and Acorn Rig & Construction Company cited to appear and assert whatever claims they or either may have to the funds in the possession of the garnishee.

In asserting their claim, Morris & Kendrick set out a state of facts very much the same as have been herein related; they denied and contested Burton's right and authority to have endorsed the check made payable jointly to them; averred that his name was inserted in the check as payee purely for purposes of convenience and to protect the drawer against unwarranted legal action, but that in any event Hunter Company was not indebted to Burton and Burton had no right or claim to any of the funds which Hunter Company ordered the drawee to pay. They then alleged that Hunter Company was, and is liable to them for the full amount of the check under the agreements which had been entered into primarily because the agreement between Burton and Hunter Company contained a stipulation pour autrui, said stipulation being in their favor. In the alternative they averred that said agreement constituted a contract of agency in which Hunter Company was the principal and Burton the agent and in the further alternative that both contracts have been merged into one agreement.

In asserting his claim, R. D. Wilson, doing business as Acorn Rig & Construction Company, alleged that at the verbal request of Burton he dismantled the derrick at the agreed compensation of $828, of which amount, as evidenced by the contract between Burton and Hunter Company, the latter agreed to bear one-half and pursuant to which agreement it issued its check for the sum of $414.00 payable to Burton and Acorn Rig & Construction Co. He sets up the same obligation on the part of Hunter Company as do Morris & Kendrick, that is that the contract it had with Burton contained a stipulation pour autrui in his favor. He otherwise predicates his demand on the same basis as Morris & Kendrick.

As previously mentioned, the matter was submitted to the district judge on an agreed stipulation and in due course he rendered judgment on the rule discharging the garnishee, Hunter Company, relieving it from further answering and ordering it to surrender the funds in its possession in the amount of $3974.92 to Morris & Kendrick and in the amount of $410.00 [sic] to Acorn Rig & Construction Company, decreeing each to be the owner of the fund in the respective amounts stated and decreeing further that The First State Bank has no right or claim thereto.

Plaintiff, The First State Bank, obtained and perfected a suspensive appeal to this Court. Morris & Kendrick appealed devolutively on the matter of interest as allowed in the judgment but later dismissed their appeal.

After the appeal was lodged in this Court Ernest S. Kendrick, partner in Morris & Kendrick, died and his legal heirs have been substituted as parties.

The trial judge did not assign written reasons for judgment but we are given to understand that he sustained the contention of the claimants Morris & Kendrick and Acorn Rig & Construction Company that they were the beneficiaries of a stipulation pour autrui contained in the contract between Burton and Hunter Company. Appellant of course contends that that was error and urges further than even though the contract be construed as containing such a stipulation, it had never been consented to as was required under our law,

prior to the time defendant lost his right to transfer the subject of the stipulation by reason of the attachment which had been levied. It claims that plaintiff should have been decreed to be preferred creditor by reason of said attachment.

A stipulation pour autrui is authorized by Article 1890 of the LSA–Civil Code which provides as follows:

"A person may also, in his own name, make some advantage for a third person the condition or consideration of a commutative contract, or onerous donation; and if such third person consents to avail himself of the advantage stipulated in his favor, the contract can not be revoked."

Article 1902 of the LSA–Civil Code also provides:

"But a contract, in which anything is stipulated for the benefit of a third person, who has signified his assent to accept it, can not be revoked as to the advantage stipulated in his favor without his consent."

The legal result of such a stipulation is to give the party in whose favor it is created "another and additional debtor". Gay & Co. v. Blanchard, 32 La.Ann. 497, on rehearing, 505.

And then, as though to preclude any doubt as to the right of such third person to pursue a cause of action as to the advantage so stipulated in his favor, he not being a party to the contract, the Code of Practice, in Article 35, provides a remedy

in the nature of an equitable action. That article reads:

> "An equitable action is that which does not immediately arise from a contract, but from equity, in favor of a third person, not a party to it, and for whose benefit certain stipulations have been made; thus, if one stipulated in a contract entered into with another person, and as an express condition of that contract, that this person should pay a certain sum on his account, or give a certain thing to a third person, not a party to the act, that third person has an equitable action against the one who has contracted the obligation, to enforce the execution of the stipulation."

In Bonnafe & Co. v. Lane, 5 La.Ann. 225, it is stated:

> "Again in Article 1896 [C.C. of 1825 now Art. 1902] it is said, a contract in which anything is stipulated for the benefit of a third person, who has signified his assent to accept it, cannot be revoked, as to the advantage stipulated in his favor, without his consent. Moreover, the lawgiver, not content with recognizing the right and leaving the remedy to implication, has in express terms given the beneficiary an action to enforce it. C.P. 35."

█ In the contract between Burton and Hunter Company, we think that a stipulation to the advantage of Morris &

Kendrick is clearly indicated. Both were desirous of having a test well drilled in the area of their leases and decided on the lease in question. In preparation for the carrying out of that desire, Burton had already contracted with Morris & Kendrick to drill the well. Clearly the drilling was to be a joint venture between Burton and Hunter Company and in consideration of the obligations undertaken by Morris & Kendrick in the contract made by Burton, Hunter Company specifically agreed "to pay one-half of the amount which Burton is obligated to pay under the terms of said contract," the only limitation being with regard to the amount stipulated. In two other clauses of the contract, as appears in the provision quoted from it, it is made plain, beyond question, that Hunter Company and Burton were to pay Morris & Kendrick who are specifically referred to therein as "contractor", in equal proportions for the costs of performing all the work that was to be involved in drilling the well.

Not only is the intention of the parties to create the obligation in favor of Morris & Kendrick made clear by the language of the contract, in our opinion, but that this is the way in which it was understood is also made evident by the manner in which it was executed. Morris & Kendrick drilled the well, submitted statements of the entire cost to Burton with whom they had initially contracted and Burton in turn presented the statement to Hunter Company which issued its check in payment, payable to the

joint order of both Burton and Morris & Kendrick. Why Burton was made a payee is not material to the issue that is now presented. It was certain, as it turned out to be that he could not collect the proceeds without the endorsement of Morris & Kendrick. What Hunter Company was interested in doing was in paying one-half of the amount of the cost of drilling the well, as concededly it had obligated itself to do, and it may well be that it was to protect itself against all claimants that it issued both checks in the manner it did, thus discharging its liability in full. Of course, the checks having been dishonored, its liability still exists as admitted by it.

██ Great stress is placed on the question of consent, counsel for appellant contending that Morris & Kendrick never assented to the stipulation in their favor before it was revoked by the attachment of the funds in the hands of Hunter Company. It would seem however that assent was given at almost the very time the contract was made, by the fact of the drilling of the well. It is shown by the agreed stipulation on which the case was submitted, that Morris & Kendrick knew of the contract between Burton and Hunter Company and even had a copy of it in their possession for several days before they performed under their contract with Burton.

██ The law does not provide for an express acceptance of or consent to a stipulation pour autrui by the beneficiary nor does it prescribe any particular form of acceptance or consent. In some cases it was held that the appearance of the beneficiary as claimant in a suit before the Court is evidence of acceptance and certainly it would seem, under that jurisprudence that the claim now being asserted by Morris & Kendrick in this proceeding, regardless of any other proof of their assent, is sufficient. See Muntz v. Algiers & Gretna Ry. Co., 114 La. 437, 38 So. 410; Vinet v. Bres, 48 La.Ann. 1254, 20 So. 693. The fact that more than two years elapsed between the approximate date of the completion of the work and the date of filing their claim in this proceeding, is immaterial. The law does not stipulate a time in which the assent required under Articles 1890 and 1902 of the Code should be made to appear and moreover no one is here urging any form of prescription against the claimants.

All that has been said with reference to the claimants Morris & Kendrick apply with the same force to the claimant Acorn Rig & Construction Company and with respect to each the judgment is found to be correct.

The decree will have to be amended in order to comply with the motion to substitute the proper parties in place of the appellee Ernest S. Kendrick, now deceased.

For the reasons stated it is now ordered that the decree in the judgment appealed from be amended by decreeing that the interest of Ernest S. Kendrick, deceased, in the amount of the funds now in the pos-

session of Hunter Company and which that Company, as garnishee, has been ordered to surrender to Morris & Kendrick, to the extent of $3,974.92, be awarded to his substituted legal representatives, in the following proportions, to-wit: To Lois Wall Kendrick, surviving spouse in community, an undivided one-half of said interest, individually, and an undivided one-fourth of said interest in her capacity as natural tutrix of the minor, Jacqueline Kendrick; and to Billie Jean Kendrick an undivided one-fourth of said interest.

In all other respects the judgment and decree are hereby affirmed.