231 So.2d 347 (1969)
255 La. 347
Nolton ANDREPONT
v.
ACADIA DRILLING CO., Inc., et al.
No. 49272.
Supreme Court of Louisiana.
February 24, 1969.
On Rehearing November 10, 1969.
Dissenting Opinion November 17, 1969.
Rehearing Denied December 15, 1969.
*348 Aaron Frank McGee, Isom J. Guillory, Jr., Eunice, for plaintiff-appellant.
Edwards, Edwards & Broadhurst, Nolan J. Edwards, Crowley, for defendant-respondent.
SANDERS, Justice.
Nolton Andrepont, a tenant farmer, sued for damages to his soybean crop caused by defendants during the drilling of an oil well on the land. The district court granted recovery. Because plaintiff's farm lease was unrecorded, the Court of Appeal reversed and dismissed plaintiff's suit. La. App., 208 So.2d 737. On application of the plaintiff, we granted certiorari to review the Court of Appeal judgment. 252 La. 274, 210 So.2d 510.
Andrepont entered into a verbal lease with the heirs of A. A. Bundick, whereby plaintiff acquired the right to farm a tract of land for a rental of twenty per cent of the crop harvested. Thereafter, the landowners executed an oil lease on the property, granting the lessee the right to use the land to explore for oil. The oil lease was duly recorded.
Paragraph 8 of the lease originally read, "The lessee shall be responsible for all damages to timber and growing crops of lessor caused by lessee's operations." However, the words "to timber and growing crops of lessor" were struck out. Thus the lease provided: "The lessee shall be responsible for all damages caused by lessee's operations."
Under the lease, a drilling company drilled a well on the land in search of oil. Later, the defendants paid the landowners $125.00 for damages and received a release from them.
Defendants made no payment to Andrepont, the tenant, and he brought this action ex delicto, or in tort, for damages to his growing soybean crop. In this Court he also contends he is entitled to recover under the mineral lease provision obligating the lessee to pay for all damages, asserting that the provision is a stipulation pour autrui.
When standing crops do not belong to the owner of the land, they are regarded as movables subject to separate ownership rather than as a part of the land. Such crops are treated as if they were harvested. LSA-C.C. Art. 465. See Fallin v. J. J. Stovall & Sons, 141 La. 220, 74 So. 911; Citizens' Bank v. Wiltz, 31 La.Ann. 244; Porche v. Bodin, 28 La.Ann. 761; Yiannopoulos, Civil Law Property, § 44, pp. 134-135 (1966). Such separate ownership may be derived from a variety of contractual relationships. When it is derived from a farm lease, the lease is of course subject to the law of registry insofar as third persons are concerned.
LSA-R.S. 9:2721 provides:
"No sale, contract, counter letter, lien, mortgage, judgment, surface lease, oil, gas or mineral lease or other instrument of writing relating to or affecting immovable property shall be binding on or affect third persons or third parties unless and until filed for registry in the office of the parish recorder of the parish where the land or immovable is situated; and neither secret claims or equities nor other matters outside the *349 public records shall be binding on or affect such third parties."
Under the foregoing statute, an unrecorded lease is ineffective against third persons to establish separate crop ownership. Separate ownership arising from a lease can be asserted against third persons only when the lease is recorded. LSA-R.S. 9:2721; LSA-C.C. Arts. 2264, 2266. See Minter v. Union Cent. Life Ins. Co., 180 La. 38, 156 So. 167; Summers & Brannins v. Clark, 30 La.Ann. 436; Yiannopoulos, Civil Law of Property, § 44, p. 135 (1966).
In the present case, plaintiff's farm lease is unrecorded. It is a verbal contract, foreign to the public records. He cannot assert his separate ownership of the standing crop against the defendants, since they are third persons. As to them, the standing crop is considered as part of the land. LSA-C.C. Art. 465. Hence, under neither theory, can plaintiff recover crop damages from defendants.
For the reasons assigned, the judgment of the Court of Appeal is affirmed.

ON REHEARING
SUMMERS, Justice.
Nolton Andrepont brings this action for damage to his soybean crop. He is the share crop tenant or farm lessee of Estelle Berdick Murphy who owns the land upon which the crop was grown and a portion of the minerals which underlie the tract. The action, originally brought against Acadia Drilling Co., Inc., and the landowner, was resolved by pleadings and stipulations into a suit between Andrepont and James E. Moncreif and John H. Dillon d/b/a Moncrief and Dillon Petroleum Geological Consultants and Producers Drilling Company, the assignees of an oil and gas lease affecting the tract in question.
The trial court granted recovery in favor of Andrepont, but this judgment was reversed on appeal to the Third Circuit. 208 So.2d 737. Certiorari was granted on plaintiff's application. 252 La. 274, 210 So.2d 510. On original hearing in this Court, plaintiff's demands were rejected. Upon reconsideration we find that we erred. Plaintiff should recover.
During 1964 Andrepont was granted a verbal lease to farm soybeans on a 35-acre tract in Acadia Parish, a condition being that he pay the landowner twenty percent of the crop as rent. Thereafter, on September 15, 1964, the land and mineral owners of the tract executed an oil and gas lease granting to the lessees the right to go upon the land to explore for and produce oil, gas and other minerals. In the printed form used to confect the lease, it was provided as a condition of the contract that "The Lessee shall be responsible for all damages to timber and growing crops of Lessor caused by Lessee's operations." This clause was altered by deleting the words "to timber and growing crops of Lessor" with the result that the clause then read: "The Lessee shall be responsible for all damages caused by Lessee's operations."
During the spring of 1965 Andrepont cultivated and planted the field in soybeans with early indications of a successful crop. Then, during July, the oil and gas lessee entered upon the land, built a board road across Andrepont's field, dug waste pits and proceeded to drill a well in search of minerals. Construction of the road, the drill site and pits destroyed part of the crop and impaired drainage in the remainder of the soybean field. The lack of adequate drainage left water standing in the field and made it impracticable to work the crop. As a result, the remainder of Andrepont's crop was damaged by "scalding" and excessive weeds.
When the drilling operations resulted in a dry hole, defendants removed their equipment. In consideration of $125, they obtained a release from the landowner for "her" damage as a result of their operations. In spite of Andrepont's repeated efforts to contact persons in authority at the well site to demand reparations, he was unable to do so. He received no payment from defendants, and on October 18, 1965 *350 this suit was filed claiming damages to the crop caused by the oil and gas lessee's operations.
In our initial consideration of the case, we found that the verbal farm lease, which would establish ownership of the farm lessee's share of the crop in the farm lessee and permit the crop to be classified in law as a movable, could have no effect against third persons, for the farm lease was not recorded as required by Section 2721 of Title 9 of the Revised Statutes, providing:
No sale, contract, counter letter, lien, mortgage, judgment, surface lease, oil, gas or mineral lease or other instrument of writing relating to or affecting immovable property shall be binding on or affect third persons or third parties unless and until filed for registry in the office of the parish recorder of the parish where the land or immovable is situated; and neither secret claims or equities nor other matters outside the public records shall be binding on or affect such third parties.
Hence we decided Andrepont could not recover for damage to the crop, which was an immovable and part of the land insofar as third parties were concerned, and only the record owner of rights in the land could assert claims for damage to the crop against third persons. We gave no consideration to Andrepont's contention that he was entitled to recover under the mineral lease provision, which he contends is a stipulation pour autrui in his favor, obligating the lessee to pay all damages caused by its operations.
We now feel that a proper disposition of this case requires a recognition that the quoted clause of the lease is a stipulation pour autrui in favor of Andrepont. As the beneficiary of the stipulation, Andrepont has a direct right of action against the oil and gas lessee to recover for his damages, and the law of registry is inapplicable to his claim.
Andrepont is not asserting "secret claims or equities" unknown to defendants. He is seeking to enforce a benefit stipulated in his favor by the landowner lessor as a condition of a commutative contract between the landowner lessor and the oil and gas lessee. Defendants, as assignees of the oil and gas lessee, are, therefore, parties to the contract in which the stipulation is a condition; defendants are not third persons protected by the laws of registry insofar as Andrepont's claim is concerned. In reaching this conclusion, we have, in effect, paraphrased the language of Mr. Justice McCaleb writing for the Court in Mallet v. Thibault, 212 La. 79, 92, 31 So.2d 601 (1947) where a like contention was made in a different factual context. However, the principle involved in the case at bar is the same, and the Mallet decision is authority for the reasons we have expressed.
Stipulations in favor of third persons (stipulation pour autrui) are favored in our law. They are specifically authorized in broad terms in Articles 1890 and 1902 of the Civil Code.
Article 1890 provides:
"A person may also, in his own name, make some advantage for a third person the condition or consideration of a commutative contract, or onerous donation; and if such third person consents to avail himself of the advantage stipulated in his favor, the contract can not be revoked.
Article 1902 provides:
But a contract, in which anything is stipulated for the benefit of a third person, who has signified his assent to accept it, can not be revoked as to the advantage stipulated in his favor without his consent.
Professor J. Denson Smith, in a study of the history, legislation and jurisprudence which have formed the doctrine of stipulations in favor of third persons in this State, has enumerated the factors to be considered in deciding whether an advantage *351 for a third person has been provided by contract between others. They are:
(1) The existence of a legal relationship between the promisee and the third person involving an obligation owed by the promisee to the beneficiary which performance of the promise will discharge; (2) the existence of a factual relationship between the promisee and the third person, where (a) there is a possibility of future liability either personal or real on the part of the promisee to the beneficiary against which performance of the promisee (sic) will protect the former; (b) securing an advantage for the third person may beneficially affect the promisee in a material way; (c) there are ties of kinship or other circumstances indicating that a benefit by way of gratuity was intended. See Smith, Third Party Beneficiaries in Louisiana: The Stipulation Pour Autrui, 11 Tul.L.Rev. 18, 58 (1936).
The obligation created by the relationship of lessor and lessee which is pertinent to this case is expressed in the following language of Civil Code Article 2692:
The lessor is bound from the very nature of the contract, and without any clause to that effect:
* * * * * *
3. To cause the lessee to be in peaceable possession of the thing during the continuance of the lease.
Section 3203 of Title 9 of the Revised Statutes also imposes an obligation upon the lessor in favor of the lessee in these words:
Any lessor of property to be cultivated who fails to permit the lessee to occupy or cultivate the property leased, is liable to the lessee in an amount equal to the market value of the average crop that could have been grown on the land or on like land located in the immediate vicinity.
Viewed in the context of the facts of this case, and upon application of the formula articulated by Smith, it is readily apparent that the legal relationship between the promisee (landowner lessor) and the third person (the farm lessee Andrepont) involved an obligation ("to cause the lessee to be in peaceable possession") owed by the promisee (landowner lessor") to the beneficiary (farm lessee) which performance of the promise (payment of all damages caused by the oil and gas lessee's operation) would discharge.
Thus each requirement of the law is satisfied. The obligation imposed by the landowner lessor and undertaken by the oil and gas lessee as a condition of the lease that is, to "be responsible for all damages caused by Lessee's operations", constitutesa a stipulation for the benefit of a third party, the farm lessee Andrepont, to pay for damage to his crop caused by the oil and gas lessee's operations.
Because the inference is clear that drilling operations in a cultivated field must damage the crop and bring about a disturbance in the peaceable possession of the farm lessee, the landowner lessor is obviously interested in requiring the oil and gas lessee to undertake her obligation to indemnify the farm lessee in the event the oil and gas lessee's operations should result in a failure to maintain the farm lessee in peaceable possession of the leased premises. Otherwise the farm lessee's forthcoming claim for damages must be satisfied by her. See La.Civil Code Art. 2692 and La.R.S. 9:3203.
In addition to her interest in having the oil and gas lessee discharge the obligation which she owed to the farm lessee, the relationship between the landowner and the farm lessee was sufficient to support the inference that there was a possibility of future liability either personal or real on the part of the landowner to the farm lessee against which performance of the promise would protect the landowner. This possibility of future liability stems from the very obligation the landowner was anxious to have the oil and gas lessee *352 discharge. And the liability is the very crop damage involved here. In other words, the case at bar fits into two of the categories envisaged by Smith in formulating the rules applicable to stipulations pour autrui.
Another factor which persuades us to conclude that there was an intention to require the oil and gas lessee to repair the farm lessee's damage is the deletion from the printed oil and gas lease of the words "to timber and growing crops of Lessor" so that the clause would read: "The Lessee shall be responsible for all damages caused by Lessee's operations." This deletion results in a change from the particular to the general and means that damages caused by the oil and gas lessee's operations to parties other than the lessor were clearly contemplated. And since drilling operations on the cultivated field must result in damage to the farm lessee, the farm lessee was undoubtedly intended as a beneficiary of this stipulation.
Defendants' briefs suggest two principal defenses to the application of the doctrine of stipulation pour autrui here. It is asserted that (1) the third party beneficiary in the case at bar was not named or determinable, and (2) there was no consent to or acceptance of the benefits by the third party beneficiary.
The contention that the third party was not named is without merit. Planiol gives the answer to this contention in his treatise "Traite Elementaire De Droit Civil", An English Translation by the Louisiana State Law Institute, Vol. 2Part 1, No. 1236 (1959):
Can one stipulate for undetermined persons? Yes, on the condition that the beneficiaries of the stipulation, at present undetermined, are determinable on the day on which the agreement is to have effect for their benefit. The obstacle to the effectiveness of a stipulation for another, is not therefore strictly speaking the simple present undetermined character of its beneficiaries, provided there are means to ascertain who they are when it becomes necessary to do so, but their future undetermined character, which must remain undefined, in other words, their undeterminability. * * *
The principle has been recognized and has found application in the jurisprudence.
A materialman, though furnishers of materials were not named as obligees in the condition of a bond in favor of the owner in a building contract, was given a right of action against the surety on the bond in Lichtentag v. Feitel, 113 La. 931, 37 So. 880 (1905). This conclusion was reached on the theory that since the bond was conditioned on the contractor's fulfilling the terms of his contract with the owner, payment of such claims by the contractor was necessary in order to fulfill the condition of the bond, and it could not be satisfied if the latter had left outstanding claims of materialmen to be paid by the owner enforceable by lien against the property. In like manner the stipulation that the oil and gas lessee would be "responsible for all damages caused by Lessee's operations" cannot be considered as fulfilled if a farm lessee's damage claim "caused by Lessee's operations" remains unsatisfied. To the same effect see Minden Presbyterian Church v. Lambert, 167 La. 712, 120 So. 61 (1929).
A contractor removing dirt from a public road, who contracted with the public authority to maintain a nearby bridge during his operations, was deemed to have obligated himself in favor of the traveling public. Thus the Court held that a traveler whose wagon fell through the bridge could maintain a cause of action against the contractor for his damages. Lawson v. Shreveport Waterworks Co., 111 La. 73, 35 So. 390 (1903).
In Volquardsen v. Southern Amusement Company, 156 So. 678 (La.App.1934) a member of a union, though unnamed, was permitted to entertain suit on a contract between the union and the defendant as a *353 beneficiary of a stipulation in his favor made by the union with the defendant.
Children in a parish, though unnamed and then undetermined, were recognized to have the right as third party beneficiaries to enforce a stipulation in their favor contained in a contract between a parish school board and superintendent of schools with the United States. Lemon v. Bossier Parish School Board, 240 F.Supp. 709 (D. C.1965).
The facts of this case readily fall within the rule of law established by these cases and expounded by Planiol. There is no problem in determining who the beneficiary of the stipulation pour autrui is. He is the party suffering damages on the leased premises as a result of the oil and gas lessee's operations. He is in this case Andrepont, the farm lessee.
Equally without merit is the argument that the third party beneficiary cannot avail himself of the stipulation in his favor for he has not consented to or accepted the stipulation. A categorical answer to this contention is found in a recent decision of this Court. Mr. Justice LeBlanc, speaking for the Court in First State Bank v. Burton, 225 La. 537, 549, 73 So.2d 453,457 (1954), said:
The law does not provide for an express acceptance of or consent to a stipulation pour autrui by the beneficiary nor does it prescribe any particular form of acceptance or consent. In some cases it was held that the appearance of the beneficiary as claimant in a suit before the Court is evidence of acceptance and certainly it would seem, under that jurisprudence that the claim now being asserted by Morris & Kendrick in this proceeding, regardless of any proof of their assent, is sufficient. See Muntz v. Algiers & Gretna Ry. Co., 114 La. 437, 38 So. 410; Vinet v. Bres, 48 La.Ann. 1254, 20 So. 693.
See also Twichel v. Andry, 6 Rob. 407 (La.1844); Smith, Third Party Beneficiaries in Louisiana: The Stipulation Pour Autrui, 11 Tul.L.Rev. 18, 55 (1936).
As beneficiary of the stipulation, therefore, Andrepont should recover for damage to his crop. After a careful review of the evidence, the trial court awarded $1,298.25. We find no cause to disturb this award.
In doing so we reject Andrepont's contention that the trial judge erroneously deducted twenty percent from the amount of the crop loss because the landowner had settled for "her" damages. In a lease of land for part of the crop, that part which the lessor is to receive is considered at all times the property of lessor. La.R.S. 9:3204. It was, therefore, permissible for the landowner to accept a nominal amount for the damage to her share, and Andrepont cannot recover a second time for the same damage.
For the reasons assigned, the judgment of the Court of Appeal is reversed. There is judgment in favor of plaintiff and against defendants for $1,298.25, with interest from date of judicial demand until paid and for all costs.
HAMITER, J., dissents.
SANDERS, J., dissents, adhering to the views expressed on original hearing.
BARHAM, Justice (dissenting).
I dissent, being of the view that our original opinion is correct. I voted for the rehearing for clarification of the applicant's strongly urged contention that we had incorrectly made R.S. 9:2721 (registry of instruments affecting immovables) applicable to movables. The court on first hearing stated the proposition, and in its citation of cases and of Yiannopoulos, Civil Law of Property, appropriately disposed of the plaintiff's contention. R.S. 9:2721 states: "No * * * surface lease * * * or other instrument of writing relating to or affecting immovable property shall be binding on or affect third persons or third parties unless and until filed for registry *354 * * *." (Emphasis supplied.) The separation of the ownership of the standing crop from the ownership of the land by lease is a surface lease "relating to or affecting immovable property" within the contemplation of R.S. 9:2721, for it changes the character of the property from immovable to movable, and therefore the provisions of the lease have no effect upon third parties except through the notice required under R.S. 9:2721.
I respectfully dissent, adhering to our conclusion on first hearing.
HAMITER, SANDERS, and BARHAM, JJ., are of the opinion a rehearing should be granted.