DOMENGEAUX, Judge.
This is an action by the supplier of air conditioning components and systems, H. G. Angle, plaintiff-appellee, against an electrical sub-contractor, Jim Talmadge, d/b/a Jim Talmadge Air Conditioning, defendant-appellant, a general contractor, Audubon Construction Corporation, defendant-appellant, and its surety, Seaboard Surety Company, defendant-appellant. More particularly, this is an action brought under the Private Works Act, LSA-R.S. 9:4801, et seq., for the enforcement of a material-man’s lien and privilege for building supplies and materials furnished for use in the construction of the Cane River Shopping Center located in Natchitoches, Louisiana.
The trial court awarded judgment in favor of plaintiff Angle and against defendants, Talmadge and Seaboard, in solido, recognizing the materialman’s lien, and further awarding judgment in the sum of $3,930.00 plus 10% statutorily imposed attorney’s fee,[1] $50.00 attorney’s fee for preparing the lien, and $10.00 for the recordation of the lien. From this adverse judgment Talmadge and Seaboard have appealed.
Appellants suggest that the trial court erred in:
(1) recognizing the materialman’s lien on the shopping center in favor of plaintiff; and
(2) holding the general contractor’s surety, Seaboard Surety Company, liable in soli-do with defendant Talmadge, when there was no showing of privity between the supplier, Angle, and the general contractor, Audubon Construction Corporation.
Charles Gremillion and Mercedes Spedale, owners of a piece of property located in Natchitoches, Louisiana, entered into a contract with Audubon Construction Corporation (Audubon) for the construction of a certain building thereon known as Cane River Shopping Center. In compliance with the Private Works Act, Audubon obtained a performance and payment bond from Seaboard Surety Company (Seaboard). In connection with the construction of the building, Audubon sub-contracted with Jim Tal-madge, d/b/a Jim Talmadge Air Conditioning (Talmadge) for the heating and air conditioning installation in one of the buildings. The prospective tenant for this building was Winn-Dixie La., Inc.
By quotation dated July 12, 1977, plaintiff-appellee H. G. Angle (Angle) proposed to furnish and supervise the installation of a temperature control system along with two smoke detectors for the price of $3,930.00. The offer was accepted by defendant Talmadge on December 14, 1977. Following the acceptance by Talmadge, Angle began to accumulate the materials, fabricate the component parts, and put the control system together. The system was delivered to Talmadge at the Winn-Dixie jobsite on March 7, 1978. After delivery of the system, Talmadge was informed by a representative of Winn-Dixie that the system supplied by Angle would not be used. Instead, Winn-Dixie would supply its own system. After being so informed, Tal-madge attempted to return the Angle control system. Angle, however, refused to accept return of the merchandise. There *1153 after, Talmadge failed to make payment for the control system, and on May 23, 1978, Angle filed the materialman’s lien on the shopping center to secure recovery of the sales price. On June 2, 1978, Audubon and Seaboard posted bond for the removal of said materialman’s lien and this suit followed.
The defendants named by the plaintiff include Talmadge, Audubon, and Seaboard. Audubon and Seaboard answered the plaintiff’s demands and filed a third party demand against Talmadge and his conventional surety, the City Bank and Trust Company of Natchitoches. Both Talmadge and the City Bank responded by denying the allegations contained in the third party demand and adopted as a defense the non-use of the air conditioning components coupled with an intent of return to the plaintiff by Talmadge. Audubon, Seaboard, Talmadge, and City Bank compromised their differences prior to trial. As part of the compromise, City Bank and Talmadge agreed to defend Audubon and Seaboard against the demands of Angle. For this reason Audubon and Seaboard waived their presence at trial and permitted a consolidated defense to Angle’s demands.
VALIDITY OF MATERIALMAN’S LIEN
In support of the trial court’s recognition of the materialman’s lien, appellee contends, that in bonded private work contracts, delivery of the materials to the job-site creates an irrebuttable presumption that the materials are incorporated into the structure and cites Graphic Arts Bldg. Co., et al. v. Union Indemnity Co., 163 La. 1, 111 So. 470 (1927). We do not agree.
Graphic, supra, and the other similar cases cited by appellee do not establish an irrebuttable presumption of incorporation of materials in the building, in bonded cases, upon delivery of the materials to the job-site. On the contrary, these cases, as we read them, merely establish the burden of proof required to hold a surety liable for materials supplied by a materialman. These cases hold a surety liable upon the materialman proving delivery and acceptance of the materials at the jobsite, and relieve the materialman from further proving that the materials are in fact incorporated in the structure. The placing of liability on the surety upon delivery and acceptance, however, does not ipso factor give rise to the right of materialmen to secure a lien on the structure when, in fact, the materials are not used or consumed in the construction of the edifice.
Under our jurisprudence, once a ma-terialman has satisfactorily shown delivery of the materials to the jobsite, the burden of proving that the materials were not in fact used in the structure is shifted to the party contesting the recognition of the lien. Hortman-Salmen Co., Inc. v. Raymond, 13 La.App. 490, 127 So. 452 (Orl.Cir.1930); Laney Co., Inc. v. Airline Apartments, Inc. 223 La. 1000, 67 So.2d 570 (1953); Jim Walter Corporation v. Emanuel, 274 So.2d 867 (La.App. 4th Cir. 1973); Century National Bank v. Parent, 341 So.2d 1371 (La.App. 4th Cir. 1977).
The facts presented at trial are essentially undisputed. On March 7,1978, the temperature control system and smoke detectors were delivered by Angle to Tal-madge at the jobsite. Thereafter, on three separate occasions representatives of the plaintiff traveled to the jobsite to check and report on the installation progress. On each occasion, plaintiff’s employees reported that the temperature control system and smoke detectors, prepared by plaintiff for the Winn-Dixie jobsite, were not being installed. In April of 1978, Talmadge attempted to return the temperature control system to Angle. At this point Angle was aware that the system which they prepared was to be replaced by one chosen by Winn-Dixie. Angle refused to accept the return of the materials, forcing Talmadge to store them at his warehouse. At trial Mr. Angle and one of his employees testified that they had inspected Winn-Dixie earlier that morning. They verified that the temperature control system prepared by them was not installed at the Winn-Dixie store. Under the foregoing facts, we find that the trial court erred in allowing the material- *1154 man’s lien to stand once the defendants clearly established that the plaintiff’s materials were not in fact used or consumed in the construction of the building. Consequently, the trial court awards of $10.00 for the recording of the lien and $50.00 attorney’s fee for preparing the lien are also denied.
LIABILITY OF THE GENERAL CONTRACTOR’S SURETY
Appellants contend that the trial court erred by holding defendant Seaboard solidarily liable with Talmadge, when there was no showing of privity between the ma-terialman, Angle and the general contractor, Audubon. Additionally, appellants contend that Seaboard expressly limited its liability by the terms of its surety bond. The performance and payment bond purport to limit Seaboard’s liability to “. .. all persons who have supplied labor or materials directly to the Principal ...” We find that appellants’ contentions, however, are without merit.
Although Seaboard attempted to limit its liability as surety by the terms of its bond, once a contract and bond have been properly entered into and recorded in compliance with the Private Works Act, the bond is considered as being a statutory bond, and incorporates by reference all of the provisions of the Private Works Act. As such, the parties are not free to delimit liability of the surety on the bond. Minden Presbyterian Church v. Lambert, et al, 167 La. 712, 120 So. 61 (1929); Electrical Supply Co. v. Eugene Freeman, Inc., et al, 178 La. 741, 152 So. 510 (1933); Bowles & Edens Company v. H & H Sewer Systems, Inc., 324 So.2d 528 (La.App. 1st Cir. 1975), writ denied 350 So.2d 896 (La.1977).[2]
The pertinent provisions of the Private Works Act insofar as this plaintiff is affected thereby are as follows:
“§ 4803. Surety’s liability
Subject to the limitation provided in R.S. 9:4814, where the owner has required the bond herein provided, the surety thereon shall be liable in solido with the contractor for all labor and materials used in the said work of improvements and the costs of recording valid privileges up to the amount of the bond, and the cancellation and erasure of the inscription of the said contract, as hereinabove provided, shall not affect the liability of the said surety on the said contract for such labor and materials, as to which labor and materials the said surety shall be bound to the same extent as the said contractor, undertaker, master-mechanic, or engineer, or other person undertaking the work.
§ 4814. Remedies against surety; record of claim; service of copy
A. Except as provided in Subsection C of this Section nothing in this Sub-part shall be so construed as to deprive any claimant of his right of action against the surety signing and bond furnished in connection with any building contract or subcontract, or against the principal obligor thereunder, which right of action against such obligor and the said surety shall accrue at any time after maturity of the claim of the said claimant.
H» * * # * • *
C. Before any person having a direct contractual relationship with a sub-contractor but no contractual relationship with the contractor shall have a right of action against the contractor or the surety on the bond furnished by the contractor, he must record his claim as provided in R.S. 9:4802 or give written notice to said contractor within thirty days from the recordation of the notice of acceptance by the owner of the work or notice by the owner or default, stating with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied or for whom the labor or service was done or performed. Such notice shall be served by mailing the same by registered or *1155 certified mail, postage prepaid, in an envelope addressed to the contractor at any place he maintains an office in the state of Louisiana.”
Upon reading these provisions together, there can be no question as to Seaboard’s liability under its bond. LSA-R.S. 9:4803 and 9:4814 clearly hold the surety solidarily liable with the contractor even where privity lacks between the contractor and the suppliers or the materialmen. See Harris Paint Company v. Quinn Construction Company, Inc., 282 So.2d 543 (La.App. 4th Cir. 1973). Likewise, under the present facts, Seaboard’s bond must be considered a statutory bond, and, as such, any provision purporting to limit liability below that required by the Private Works Act is void.
For the above and foregoing reasons the judgment appealed from is affirmed in part and reversed in part, and recast as follows:
It is Ordered, Adjudged, and Decreed that judgment be rendered herein in favor of plaintiff H. G. Angle Company, Inc., and against defendants Jim Talmadge, Audubon Construction Corporation, and Seaboard Surety Company, in solido, in the sum of $3,930.00, with seven percent (7%) per an-num interest thereon from date of judicial demand until September 12, 1980, and ten percent (10%) per annum interest thereon thereafter until paid, plus ten percent (10%) on both principle and interest representing the statutorily imposed attorney fee.
It is further Ordered, Adjudged, and Decreed that the materialman’s lien filed by plaintiff Angle located in the mortgage records of Natchitoches Parish in Mortgage Book 371, page 23, be declared null and void, and that the inscription of said lien be cancelled.
Costs of this appeal are taxed one-half (Vz) to appellants and one-half (V2) to appel-lee.
REVERSED IN PART, AFFIRMED IN PART, AND RENDERED.
GUIDRY, J., concurs.

. LSA-R.S. 9:3902 provides for a 10% attorney’s fee when the surety on a bond fails to pay his obligation and it becomes necessary for the creditor to sue thereon.

. It was the evident intention of the owner to exact of the contractor the bond required by statute, and it was also the evident intention of the contractor and the surety to give such a bond. Furthermore, all procedural requirements under the act were met.